85 123
110 251

## THE PEOPLE v. JAMES L. McQUAID.

*Criminal law—Bigamy—Proof of foreign laws—Expert testimony—
Marriage.*

1. The marriage laws of Pennsylvania may be proved by the introduction of Brightly's Purdon's Digest, a non-official compilation of the statutes of that state of twenty-five years' standing, and which is admitted in the courts of Pennsylvania as *prima facie* evidence thereof; and the construction placed upon such marriage laws by the court of last resort of that state may be shown by its published reports.

2. A minister of the gospel residing in Pennsylvania, and authorized by statute to perform the marriage ceremony, and required as such to observe certain *formulas* therein prescribed, is a competent witness to identify the book in which said statute is published, and to show the common acceptance of the publication as authority in the home courts.

3. The rule in Pennsylvania regarding marriages not performed strictly in accordance with the statute is the same as that laid down in this State, namely, that proof of such an informal marriage must be supplemented by proof of cohabitation.

Error to Livingston. (Newton, J.) Argued February 4, 1891. Decided February 27, 1891.

Information for bigamy. Conviction reversed, and new trial ordered. The facts are stated in the opinion.

*D. Shields*, for respondent.

*A. A. Ellis*, Attorney General, and *William P. Van Winkle*, for the people.

McGRATH, J. Defendant was convicted of bigamy in marrying, at Fowlerville, one Emma Dodge, December 7, 1889, while having another wife living. The information charged the first marriage to have been had with one Jennie Gartley, in December, 1880, at Allegheny city,

Penn.   The second  marriage was clearly proven, and the
only questions raised  relate  to  the  proofs  of  the  first
marriage.

A number of  assignments of  error  are  presented, but
defendant's counsel has summarized them as follows:

1. Was error  committed in proving  the marriage  laws
of Pennsylvania?

2. Was the marriage, under  the  laws of  Pennsylvania,
sufficiently  proven  to  meet  the  requirements of  the
criminal laws of this State?

3. Was respondent injured by the rulings of the circuit
judge?

Our statutes  relating to the  proof of  the statute law
and common law of other states are as follows:

" SEC. 7508.  Printed  copies of  the statute laws and
resolves of any other  of the  United  States, or of  any
territory thereof, or of any foreign state, if purporting to
be published under  the  authority of  the  respective gov-
ernments, or if commonly admitted and used' as evidence
in their courts, shall be admitted in all courts and in all
proceedings within this State, as *prima facie* evidence of
such laws and resolves.[1]

" SEC. 7509.   The unwritten or common law of any other
of the United  States, or of  any territory thereof, or of
any foreign state or country, may be  proved as facts by
parol evidence; and the books of reports of cases adjudged
in their courts  may also be admitted as evidence of such
law."

No printed copies of the  statute laws of  the state of
Pennsylvania, purporting  to  be  published  under  the
authority of the  government of  that state, were offered
in evidence, and  nothing having, or purporting to have,
the sanction or authority of that state was offered in evi-
dence to prove its laws.    But  the  prosecution proceeded
to show  that Brightly's Purdon's Digest was a compila-
tion of  the  statutes of  Pennsylvania, and was commonly
admitted in all courts and in all proceedings in that state,

---

[1] As amended by Act No. 113, Laws of 1885 (3 How. Stat. p. 3724).

as *prima facie* evidence of such laws. To show this, one Jacob L. Thompson, resident of that state, was called, and testified in substance, under objection and exception, that in his business he had frequent occasion to refer to the statutes of Pennsylvania; that, when he did desire so to refer, he consulted Brightly's Purdon's Digest; that there is no other compilation of the statute laws of Pennsylvania; that he had been in the courts of that state, and they there used said digest as evidence of the statute laws of said state; that attorneys had referred to it in his presence as authority; that he had been in courts, and observed the introduction of these books as containing the statutes of Pennsylvania for 20 years. Brightly's Purdon's Digest of the Statute Laws of the State of Pennsylvania, consisting of two volumes, was then offered in evidence, and received under objection and exception; the particular chapter to which attention was called being entitled " Marriage " (volume 2, p. 1147).

It is claimed that the witness was not shown to be an expert, and therefore not competent. The question of his competency was one for the court, and not for the jury. It was within the knowledge of the trial court that Brightly's Digest is not a fugitive publication, but that it has been published for a quarter of a century as a compilation of the statutes of the state of Pennsylvania; that it occupies a place in every bar library of our own State, and in many of our private libraries; that its existence must be a matter of as general knowledge in that state as the existence of Howell's compilation is here. The information called for from the witness comes within the range of what is denominated "expert testimony," if at all, only because of the place where the testimony was to be given. In Pennsylvania the information called for was within the range of ordinary observation and intelligence, and the witness was a resident of

that state. The inquiry involved not what was the law of that state upon a particular subject, but simply in what form the statutes of that state were published, and whether the books presented were received and recognized as authority. The witness was a minister, empowered by statute to perform the marriage ceremony, and required as such to observe certain prescribed formulas. He would naturally consult statutory provisions, and testified that he did habitually consult the statutes of that state. A cardinal has been held competent to prove the Roman matrimonial law. Here a minister, authorized by statute to perform the marriage ceremony, is called simply to identify the book in which the law is published, and to show the common acceptance of the publication as authority. The testimony was competent, and there was no error in the admission of the digest, nor was there error in the admission of the reports for the purpose of showing what construction the courts of that state had put upon the statute.

The second point relates to the sufficiency of the proofs of the first marriage. The statute regarding marriages, introduced in evidence, provides, among other things, that the parents or guardians shall, if convenient, be first consulted with, and the parties' clearness of all engagements signified by a certificate from some credible person where they live or have lived, produced to such religious society to which they relate, or to some justice of the peace of the county in which they live, and by their affixing their intentions òf marriage on the court-house or meeting-house doors in each respective county where the parties do reside or dwell, one month before solemnization thereof; the which said publication, before it be so affixed as aforesaid, shall be brought before one or more justices of the peace in the respective counties to which they respectively belong; which justice shall

subscribe the said publication, witnessing the time of such declaration, and date of the said publication, so to be affixed as aforesaid. And all marriages shall be solemnized by taking each other for husband and wife, before 12 sufficient witnesses; and the certificate of their marriage, under the hands of the parties and witnesses, at least 12, and one of them a justice of the peace, shall be brought to the register of the county where they are married, and registered in his office. It further provides that if any clergyman shall take upon him to join in marriage any persons without such publication, such clergyman shall forfeit the sum of 50 pounds. None of these provisions of law were complied with. The only witness present was the hotel clerk. The parents were not consulted. No publication was had, and no registry of the marriage made, as required. The formal ceremony of marriage took place at Allegheny city, some distance from the homes of the parties. It had all the ear-marks of a clandestine marriage. Even the minister performing the ceremony was liable to a forfeiture of 50 pounds for performing it in the manner claimed.

The rule in Pennsylvania regarding marriages not performed strictly in accordance with the statute is the same as that laid down in our own State. In this class of cases the invariable rule is that proof of such an informal marriage must be supplemented by proof of cohabitation. The only testimony upon this point was that of the witness Thompson, and his testimony is so clearly hearsay as to be wholly incompetent. He saw the respondent but once after the marriage and before his arrest here, and then he was driving past witness' house. He saw Jennie, the wife, but once, and there is no testimony that he has ever seen the parties together at any time or place after the ceremony. The witness admits upon the trial that all he knows regarding the where-

abouts of the parties is mere rumor.    Defendant's coun-
sel moved to strike out this hearsay testimony of the wit-
ness, but the court refused.   The court charged the jury
that *prima facie* a good marriage is shown when the con-
tract of marriage, whether in due form or not, is proven,
followed by cohabitation; but there was no competent
testimony showing the conduct of the parties after the
marriage or of cohabitation.

The conviction must therefore be set aside, and a new
trial had.

The other Justices concurred.