*9 9 - 3 4 0*

THOMAS SORENSEN ET AL. V. ALFRED HANS SORENSEN.*

FILED APRIL 9, 1903.   No. 12,753.

1. **Petition:** SUFFFICIENCY AFTER TRIAL. Where issue is joined and a
   trial had without objection to the sufficiency of the petition, that
   pleading will be construed liberally, and if the essential elements
   of plaintiff's case may be implied from its terms by reasonable
   intendment, they will be regarded as alleged sufficiently.

2. **Right to Open and Close.** If any of the material facts of a petition
   are not admitted, but are denied, either directly or argumenta-
   tively, the right to open and close is in the plaintiff.

3. **Denial:** BURDEN OF PROOF. A party can not acquire the right to open
   and close by pleading a denial in affirmative form. If his denial
   is sufficient to prevent his adversary from obtaining judgment
   on the pleadings, it is sufficient to put the burden of proof upon
   the latter.

4. ———: RIGHT TO OPEN AND CLOSE. Nor can he acquire a right to
   open and close, to which he is not entitled on his pleadings, by
   filing an "admission" in which he assumes the burden of proving
   ing affirmatively matter amounting to a denial of plaintiff's case,

* Rehearing allowed. See opinions, pp. 490, 500, 509, *post.*

and admits that plaintiff may recover, unless an essential aver-
ment of his petition is negatived in a particular way.

5. **Heirs:** PLEADING AND PROOF. Brothers, and children of deceased
brothers and sisters, of an intestate are not *prima facie* heirs
and distributees, and must allege and prove that there are no
persons of the several classes which would take before them and
exclude them, under the statute, before they can obtain an order
for distribution of the estate.

6. **Admission and Denial:** BURDEN OF PROOF. An admission that the
petitioners for distribution are brothers, and nephews and nieces
of the intestate, and are heirs and distributees unless a person
named is proved to be the son of the intestate, in connection with
a general denial and an allegation that such person is the son of
the intestate and is sole heir and distributee, does not relieve
the petitioners of the necessity of making a *prima facie* case.

ERROR to the district court for Valley county: JAMES
N. PAUL, DISTRICT JUDGE. *Reversed.*

*Alfonso M. Robbins, Herman Westover, F. E. Bishop,
E. J. Babcock* and *J. W. Deweese,* for plaintiffs in error.

*A. Norman, George W. Hall, Victor O. Johnson, Elliott
J. Clements* and *Edwin M. Coffin, contra.*

POUND, C.

A general statement of the facts out of which this con-
troversy arises may be found in an opinion rendered in
another branch of the same proceeding. *Sorensen v. Sor-
ensen,* 56 Neb. 729. When the cause was here before, the
question was, who was entitled to appointment as admin-
istrator of the estate? After that question had been deter-
mined and the claims of the alleged widow disposed of, the
petitioners in the present case, who are brothers and chil-
dren of a deceased brother and sister of the intestate, filed
a petition in the county court praying for distribution of
the estate to them as heirs and distributees under the
statute. Alfred Hans Sorensen, the defendant in error,
by his guardian, answered, admitting the relationship of
the petitioners to the intestate as alleged, admitting cer-
tain other allegations as to the condition of the estate, the

property for distribution and the propriety of a distribution thereof, and denying generally all the other allegations of the petition. He alleged further that he was the son, and as such the sole heir and next of kin of the intestate, and prayed that all the property be turned over to him. In due course this proceeding was taken to the district court on appeal, and by order of the latter court, apparently at the instance of defendant in error, was tried upon the pleadings below. A verdict was rendered finding that Ellen Sorensen, the alleged widow, was lawfully married to the intestate, and that said Alfred Hans Sorensen was born of such marriage. Thereupon a judgment was entered in his favor, which is now before us on petition in error.

Several difficult and interesting questions have been argued, which we need not examine at this time for the reason that we think the trial court erred in its ruling as to the right to open and close. Prior to the trial, defendant in error filed a paper in which he admitted "that the brothers, nephews and nieces named in the petition for distribution in this proceeding are the heirs at law and next of kin of the said Hans C. Sorensen, deceased, and entitled to his estate, unless it be proved that said Hans C. Sorensen intermarried with one Ellen Ferguson and the cross-petitioner, Alfred Hans Sorensen, is the issue of said marriage and the legitimate son of the said Hans C. Sorensen, as alleged in the cross-petition of said Alfred Hans Sorensen." Upon this, over the objection and exception of plaintiffs in error, the right to open and close was granted to their adversary. The ruling is defended on two grounds: That the petition does not allege sufficiently there were no persons entitled to take as distributees in preference to petitioners, and hence that the general denial in the answer does not put such question in issue; and, second, that under the written admission and an oral admission in the same terms at the trial, the defendant in error had the burden of proof and was entitled to the right accorded him.

The first point, if tenable, goes much deeper than the mere question of burden of proof and right to open and close. If the petition does not set forth sufficiently that there are no persons of the several classes which, under the provisions of the statute, take precedence of and exclude brothers and sisters and the issue of brothers and sisters, as will be seen presently, no cause of action is stated. Hence, in substance, the defendant in error is contending that the petition does not state a cause of action. If a cause of action is stated, as against objection made for the first time after trial of the cause, and if the parties treated the petition as sufficient to raise an issue, and actually tried that issue, we do not see how it can be asserted that there was no issue to be joined by defendant's general denial, and that an essential element of the plaintiff's case, not expressly admitted, without which there could be no recovery, was not put in issue by such denial. Had objection been made either in the county court or the district court, a more specific statement would have been imperative. Without an allegation in the form of a statement of fact that there were no persons entitled to take under the statute in preference to the plaintiffs, the petition must have fallen before a timely objection. But no such objection was ever made. Consequently, we are compelled to look at the pleading from a different standpoint. Where issue is joined and a trial had without objection to the sufficiency of the petition, that pleading will be construed liberally, and if the essential elements of plaintiff's case may be implied from its terms by reasonable intendment, they will be regarded as alleged sufficiently. *Latenser v. Misner*, 56 Neb. 340; *Omaha Nat. Bank v. Kiper*, 60 Neb. 33; *Fire Ass'n of Philadelphia v. Ruby*, 60 Neb. 216; *National Fire Ins. Co. v. Eastern Building & Loan Ass'n*, 63 Neb. 698; *Punteney Mitchell Mfg. Co. v. Northwall Co.*, 66 Neb. 5. In the three cases last cited, this rule was applied to oral objections to petitions at the trial. Where the petition is not attacked by motion or demurrer, but its sufficiency is challenged after issue joined and at the

trial, it has been laid down repeatedly that the pleading will be "upheld if possible." *Fire Ass'n of Philadelphia v. Ruby, supra; Norfolk Beet Sugar Co. v. Hight,* 56 Neb. 162. In such case, it will be construed "in the light of the entire record." *National Fire Ins. Co. v. Eastern Building & Loan Ass'n, supra.* The language of this court in another connection, that "a pleading may be said to allege what can by reasonable and fair intendment be implied from its statements," applies here with peculiar force. *Dailey v. Burlington & M. R. R. Co.,* 58 Neb. 396. Here the defendant treated the petition as sufficient. He answered it and went to trial without objecting to it, and he filed an "admission" in which he clearly assumed that plaintiffs had alleged the essential fact that there were no persons nearer in degree to the intestate who might claim under the statute. Hence we must take that fact to be sufficiently set forth.

The right to open and close is governed by section 283, Code of Civil Procedure. That section, which in this respect is merely declaratory of the general rule, has been construed repeatedly, and we think the fair import of its language and of the decisions by which it is interpreted may be stated thus: If any of the material facts of a petition are not admitted, but are denied, either directly or argumentatively, the right to open and close is in the plaintiff. *Rolfe v. Pilloud,* 16 Neb. 21; *Mizer v. Bristol,* 30 Neb. 138; *Seebrock v. Fedawa,* 30 Neb. 424; *Suiter v. Park Nat. Bank of Chicago,* 35 Neb. 372; *Welsh v. Burr,* 56 Neb. 361; *Summers v. Simms,* 58 Neb. 579. It is obvious that if any material fact is put in issue, the plaintiff must fail, to that extent at least, unless he introduces evidence in support thereof; and this is true even where the sole issue, so far as the petition is concerned, is the amount of damages. *Summers v. Simms, supra.* Although the particular allegations of the petition put in issue are indefinite and ill stated, if they are enough to sustain a judgment, the right to open and close is in the plaintiff. *Hewit v. Bank of Indian Territory,* 64 Neb. 463. We think it very clear that

a party can not acquire the right to open and close by pleading a denial in affirmative form. If his denial is sufficient to prevent his adversary from obtaining judgment on the pleadings, it is sufficient to put the burden of proof upon the latter. Whether a defense is a denial or constitutes new matter and is affirmative, depends, under the Code of Civil Procedure, upon its substance, not upon the form in which it is stated. Matter which is in fact and substance a denial, can not be made into matter in avoidance, for the purpose of obtaining the right to open and close, by the form in which it is stated by an astute pleader. *Myers v. Binkley,* 26 Ind. App. 208, 59 N. E. 333; 1 Thompson, Trials, sec. 256, and cases cited. In the same way, a plaintiff can not obtain the right to open and close by anticipating defenses and alleging what he is not obliged to prove. *Bush v. Wathen,* 104 Ky. 548, 47 S. W. 599. Nor can a party acquire a right to open and close, to which he is not entitled on his pleadings, by filing an "admission" in which he assumes the burden of proving affirmatively matter amounting to a denial of plaintiff's case, and admits that plaintiff may recover unless an essential averment of his petition is negatived in a particular way. If the "admission" were contained in the pleadings of defendant in error in the case at bar, it would amount, so far as it had any force at all, to a denial, and would put upon the plaintiffs the burden of showing, *prima facie,* that there were none in nearer degree to the intestate. Further than that, it could not operate. The right to open and close depends upon the issues to be tried. A party can not join issue upon a material allegation of his adversary, and at the same time assume the burden of proving his denial. 1 Thompson, Trials, sec. 256. If he could do so, there is no reason why the other party should be denied this privilege; and in all cases where the right to open and close was thought advantageous, the court would be besieged with offers of this sort from the respective parties. It has been held that in order to get the right to open and close, a defendant must admit the case

made by plaintiffs' petition in his pleadings. *Heilman v. Shanklin,* 60 Ind. 424; *Woodruff v. Hensley,* 26 Ind. App. 592, 60 N. E. 312; *Dorough v. Johnson,* 108 Ga. 812, 34 S. E. 168; *Buzzell v. Snell,* 25 N. H. 474, 479. This has been doubted, however (1 Thompson, Trials, sec. 255), and we need not pass upon the question. For, unless the whole of plaintiff's cause of action is admitted, he has something to prove under any theory. A denial, coupled with an offer to assume the burden of proving it, is something unknown to the law.

Applying these principles to the case at bar, we think the petitioners should have been accorded the right to open and close. Brothers, and children of deceased brothers and sisters, of an intestate, are not *prima facie* heirs and distributees, and must allege and prove that there are no persons of the several classes which would take before them and exclude them, under sections 30 and 176, chapter 23, Compiled Statutes (Annotated Statutes, 4930, 5041) before they can obtain an order for distribution of the estate. *Emerson v. White,* 29 N. H. 482; *Stinchfield v. Emerson,* 52 Me. 465; *Gardner v. Kelso,* 80 Ala. 497, 2 So. 680; *Henriques v. Yale University,* 28 App. Div. (N. Y.) 354, 51 N. Y. Supp. 284, 289. In consequence, an admission that the petitioners for distribution are brothers and nephews and nieces of the intestate, and are heirs and distributees unless a person named is proved to be the son of the intestate, in connection with a general denial and an allegation that such person is the son of the intestate and is sole heir and distributee, does not relieve the petitioners of the necessity of making a *prima facie* case.. If no evidence were introduced by either party they would fail, notwithstanding the defendant in error's gratuitous assumption of the burden of proof. A close analogy is furnished by an English case, where the question was as to the legitimacy of a person who, if legitimate, was clearly the heir at law. He offered to admit that plaintiff's lessor was the heir at law, unless he, the person whose relation to the deceased was in dispute, was the heir. The court held he could not

obtain the right to open in this way. *Doe v. Bray,* Moo. & Mal. (Eng.) 166. Such a case is very different from one where the petitioners' *prima facie* right to take as distributees is admitted, but an affirmative defense, as, for instance, an advancement under sections 34-39, chapter 23, Compiled Statutes (Annotated Statutes, 4934-4939), is interposed. The fact that there was a person nearer in degree to· the intestate, who would exclude petitioners under the statute, operated to negative their case, not to avoid it.

We therefore recommend that the judgment be reversed and the cause remanded for a new trial.

Barnes and Oldham, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause is remanded for a new trial.

Reversed and Remanded.

The following opinion on rehearing was· filed March 2, 1904. *Judgment of reversal adhered to:*

1. **Proceedings for Distribution of Estate:** Right to Open and Close. In a proceeding for the distribution of the estate of an intestate, in a contest between parties, each claiming as next of kin and heir at law, to the exclusion of the other and all other persons, the right to open and close rests in the discretion of the court, disaffirming the rule announced ·on former hearing, *ante,* p. 483.

2. **Judgment in Rem:** How Far Conclusive. A judgment *in rem* is binding and conclusive on all persons as to every matter necessarily involved in an adjudication upon the status of the person or thing which is the subject matter of the proceeding; but as to matters involved in collateral litigation in such proceedings, between particular parties, and not necessarily involved in such adjudication, it is binding only upon those whò actually litigated such matters, and their privies.

3. **Privity.** Privity, so far as concerns the effect of a judgment on property rights, does not arise from mere relationship by blood or affinity, nor because two parties may have an interest in the same subject matter of litigation; it implies a relationship by succession or representation, between a party to the first action

and a party to a subsequent action, in respect to a matter adjudicated in the first.

4. **Competency of Witness.** In a proceeding for the distribution of the estate of an intestate, the administrator is an adverse party, and where one of the issues between rival claimants is a marriage of the intestate with a third party, the testimony of such third party is inadmissible on such issue, under the provisions of section 329, Code of Civil Procedure.

ALBERT, C.

On the 3d day of February, 1895, Hans C. Sorensen died intestate, leaving an estate in Valley county, where he resided at the time of his death. Some of his collateral kin filed a petition in the county court of that county for letters of administration, alleging that the intestate had left neither widow nor issue, and that they were his next of kin and heirs at law. One claiming to be his widow appeared in the proceeding, and claimed the right to nominate an administrator of his estate. From the judgment of the county court on that branch of the case an appeal was taken to the district court, where judgment was given in favor of the party claiming to be the widow of the intestate. An opinion of this court, reversing the judgment of the district court, is reported under the present title in 56 Neb. 729.

On a second trial in the district court, the court found that the party claiming to be the widow had never been married to the intestate, and gave judgment denying her right to nominate an administrator, and granting administration on the petition of the collateral kin. No appeal was taken from this judgment, and it is in full force and effect.

Afterward, two brothers, and the children of a deceased brother and sister of the intestate, filed a petition in the county court for a distribution of the assets of the estate, alleging their relationship to the intestate, and that they were his only heirs at law. Thereafter, one Alfred Hans Sorensen, by his guardian, filed an answer and cross-petition, wherein the relationship of the parties as alleged in the petition for distribution was admitted, and all the

other allegations thereof denied. He alleged, as grounds for affirmative relief, that on the 16th day of October, 1894, the intestate had married one Ellen Ferguson (the party who claimed as widow in the former proceeding) and that he is the issue of said marriage, and the son and heir at law of the intestate. He also prayed for a decree of distribution.

To the affirmative matters alleged in the answer and cross-petition, the petitioners interposed a general denial. They also pleaded the judgment rendered in the proceedings for the appointment of an administrator as an estoppel on the question of the alleged marriage.

A trial was had, which resulted in a judgment in favor of the cross-petitioner. An appeal was taken to the district court, where the petitioners filed new pleadings, which were stricken from the files, and the cause set down for trial on the pleadings filed in the county court. A trial was had, which also resulted in a finding and judgment for the cross-petitioner. The petitioners brought the case here on error, and an opinion, reversing the judgment of the district court, was filed therein, and is reported *ante,* p. 483; a rehearing was allowed, and the case is now before the court for the second time.

The recommendation in the former opinion for the reversal of the judgment, is based on the ruling of the trial court permitting the defendant in error to open and close. The opinion contains an extended discussion of the principles governing the right to open and close, but it is now thought that the discussion is not altogether pertinent to the question as presented by the record in this case. The proceeding is *in rem,* and all persons interested in the estate are parties. Such proceedings ordinarily are binding, not only upon those actually before the court, but on all the world. It is obvious, therefore, that those actually before the court may not, by their pleadings, or otherwise, bind those not before it, nor dispense with the proof of any of the ultimate facts essential to a decree of distribution. Each party must rely on the strength of his own case, and

not on the weakness of the opposition.  Hence had no evidence been given, the court would not have been warranted in entering a decree of distribution.  In other words, both parties must have failed.  That being true, neither the statutory provision to the effect that the party who would be defeated were no evidence given on either side is entitled to open and close, nor the ancient rule, of which it is declaratory, applies to cases of this character.  With that provision out of the way, neither party had the absolute right to open and close.  Both asked, the distribution of the estate, and each claimed the whole, to the exclusion of the other and of all other persons.  The question before the trial court was not, which of the parties actually before it was entitled to a decree, but whether either of them was, and, so far as the right to open and close is concerned, they were on equal footing.  They occupied a position analogous to that of rival claimants for the same fund, who have been brought before a court of equity by a bill of interpleader, requiring them to interplead for the fund, in order that their respective rights may be ascertained and determined and the plaintiff exonerated.  As to the right to open and close in such cases, Mr. Thompson, in his work on Trials, section 242, says: "It is supposed that such a case must yield to the sound discretion of the court."  See, also, *Loudon v. Coleman,* 62 Ga. 147.  Whether such discretion is absolute, is a question that does not arise in this case, because there is nothing in the record tending to show that it was abused.  We are satisfied that the conclusion reached on the former hearing upon this point is erroneous.

It will be remembered that the defendant in error claims as heir at law, on the ground that he is the issue of a marriage between his mother and the intestate.  The plaintiffs in error contend that he is concluded on the question of a marriage between his alleged parents by the judgment in the proceeding had for the appointment of an administrator, wherein the court found that the mother had never been the wife of the intestate.  In support of this conten-

tion it is argued, as upon the former hearing, that the proceeding for the appointment of an administrator was *in rem,* and all the world, including the defendant in error, were parties, and are concluded by the matters litigated and judicially determined in such proceeding. That the proceeding was *in rem,* and that all the world were parties thereto, may be conceded. It will also be conceded, that, ordinarily, a judgment *in rem,* rendered by a court of competent jurisdiction, is binding on all persons, and is not open to collateral attack. But it does not necessarily follow that the whole world are bound by every matter litigated and judicially determined in the proceeding of which such judgment is the product. The principal relief sought in a proceeding *in rem,* is usually an adjudication upon the status of some person or thing, and the judgment, *ipso facto,* renders the status of such person or thing what it declares it to be. *Woodruff v. Taylor,* 20 Vt. 65. From the very nature and purpose of such judgment, it is essential that it be conclusive and binding on all persons. But in addition to the principal relief sought in a proceeding *in rem,* in which, in a general way, all persons may be said to be interested, there is also commonly involved some personal right pertaining to some particular person or class, which may become the subject of litigation and adjudication in such proceedings between the parties claiming such right, and to which all other parties to the proceeding may be wholly indifferent. While it is essential to the repose and tranquillity of society that a judgment *in rem,* so far as it goes to the principal relief sought in the proceeding and concerns the rights which each person shares in common with every other person, should be binding on all persons, it would be unreasonable and oppressive to hold that all are bound by the litigation and determination of collateral questions, arising between parties litigating their personal rights in the same proceeding. If such were the law, no man could safely stand aloof while such proceedings are in progress, however indifferent as to the ultimate result, because he could

never know to what extent his rights, wholly disconnected from the main purpose of such proceedings, might be affected by the issues framed between other parties therein for the determination of questions concerning only themselves. Such a rule would lead to infinite complications.

It is true that it is allowable to reason back from a judgment. Hence, a judgment *in rem,* which, as we have seen, is binding on the whole world, stands, as to all persons, as an indisputable conclusion; and where it could only be drawn from certain premises, such premises are equally indisputable with the conclusion itself. *Burlen v. Shannon,* 99 Mass. 200. But we must view the conclusion in the light of the main purpose of the proceeding in question, namely, the grant of administration on the estate of the intestate. As to every fact essential to such purpose, the judgment is conclusive and binding on all persons, because it is a conclusion which could not have been reached without a finding of such facts. The facts essential to a grant of administration are: (1) That the person on whose estate administration is asked died intestate; (2) that at the time of his death he was an inhabitant or resident of the county in which the proceeding is brought, or a nonresident of the state, and left an estate to be administered in such county. Compiled Statutes, chapter 23, section 177 (Annotated Statutes, 5042). Such facts are the premises from which a grant of administration must be drawn as a conclusion, and, like the grantor judgment itself, are indisputable in a collateral proceeding between those claiming through such proceedings or under the intestate. *Bradley v. Missouri P. R. Co.,* 51 Neb. 653. There is one exception to the foregoing rule, which is: If the party on whose estate such proceeding is had is alive, the proceeding and all judgments and orders therein are absolutely void. Van Fleet, Collateral Attack, sec. 610, and citations. Many reasons have been given for this exception, none of which seem to be entirely consistent with those supporting the rule as to the conclusiveness of other jurisdictional facts. It is thought that the true

reason underlying the exception is to be found in this distinction between the other jurisdictional facts and the death of the intestate, namely, the former go only to the jurisdiction of a particular court, while the latter goes to the jurisdiction of any and all courts to grant administration.

But the right of any particular person to nominate an administrator, or to letters of administration, by reason of his relationship to the intestate, is not one of the essential facts upon which the grant is based. Such right is purely personal and may be renounced by the party entitled to exercise it. It is not an absolute right, because the person claiming it may be incompetent, or may be one of a class the members of which share the right in common, or, for some other reason, the case may call for the exercise of the discretion of the court. *Atkinson v. Hasty*, 21 Neb. 663; *Spencer v. Wolfe*, 49 Neb. 8. There is no presumption that one not claiming the right to nominate an administrator, or to letters of administration, has any interest in the litigation between others concerning such right. It would be absurd to require such party to embroil himself in a controversy in which he had no interest, and to resist a judgment or decree to which he had no objection, and which of itself could work him no harm, merely to prevent an objectionable finding. We think the true rule is that a judgment *in rem* is binding and conclusive upon all persons as to every matter necessarily involved in the adjudication upon the status of the person or thing which is the subject matter of the proceeding, but as to matters involved in collateral litigation therein, between particular parties, and not necessarily involved in a judgment of that character, it is binding only upon those who actually litigated such matters and their privies. That rule, as applied to the facts in this case, is fully supported by the following: *Blackburn v. Crawfords*, 3 Wall. (U. S.) 175; *Kearney v. Denn*, 15 Wall. (U. S.) 51, 57; *Shores v. Hooper*, 153 Mass. 228, 26 N. E. 846; *Spencer v. Williams*, 40 Law Jour. (Pro.)

(Eng.) 45; *In re Estate of Nugent,* 77 Mich. 500, 43 N. W. 889; *In re Lois McCarty,* 81 Mich. 460, 45 N. W. 996.

But as to the parties who actually litigated the question of the alleged marriage between the intestate and the mother of the defendant in error in the proceeding for the appointment of an administrator, the judgment rendered in such proceeding is conclusive, and precludes a reexamination of that question in any subsequent litigation between them. *Blackburn v. Crawfords and Kearney v. Denn, supra.* It is claimed by the plaintiffs in error that the fendant in error is privy to such judgment, and is, therefore, bound by it as effectually as though he had actually participated in the litigation of that question. It is elementary that a judgment is conclusive, both on the parties and their privies. But privity, so far as concerns the effect of a judgment over property rights, at least, does not arise from mere relationship by blood or affinity, nor because two parties may have an interest in the subject matter of the litigation. The term "privity" implies a relationship, by succession or representation, between a party to the first action and a party to the subsequent action, in respect to a matter adjudicated in the first. *Samp v. Franklin,* 144 N. Y. 607. The mother of the defendant in error did not, in any legal sense, represent him in the former proceeding, nor is there the slightest relationship between them by succession. Hence, so far as his rights in these proceedings are concerned, he is not a privy to the former adjudication of the question of the marriage between his mother and the intestate, and is not bound by it.

On the trial in the present proceeding, the mother of the defendant in error was permitted, over the objections of the plaintiffs in error, to testify to facts tending to show a common-law marriage between herself and the intestate, and it is now claimed that her evidence was erroneously received. Section 329, Code of Civil Procedure, provides that "no person having a direct legal interest in the result of any civil action or proceeding, when the adverse party

36

is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness, unless," etc. This section, as well as that of which it is amendatory, has been a fruitful source of controversy, and the subject of frequent interpretation in this court. The word "representative" has been held to include any person or party who has succeeded to the rights of the decedent, whether by purchase, descent or operation of law. *Kroh v. Heins,* 48 Neb. 691; *Sorensen v. Sorensen,* 56 Neb. 729, and cases cited. Those cases leave no room for doubt that an administrator, in proceedings of this character, is a representative of his intestate.

That the administrator is an adverse party, as to all persons claiming the right to share in the distribution of the personal estate, seems to us equally clear. He is in possession of such estate by virtue of his office, and the object of the proceeding is to terminate his right of possession. To that extent, at least, he is an adverse party within the meaning of the statute.

It remains to determine whether the witness has a direct legal interest in the result of the proceeding. In the consideration of that question it must be kept in mind that the right of the defendant in error to the estate, or any portion of it, hinges on the question of the marriage of his mother, the witness, with the intestate. If that marriage be established, his right to inherit the estate, to the exclusion of the plaintiffs in error, follows as a legal necessity. The fact of such marriage is the issue between the plaintiffs in error and the defendant in error in this proceeding, and a decree in favor of either of such parties will, of necessity, involve an adjudication of that issue, which, as between such parties, will operate as an estoppel and foreclose further inquiry upon that question. This follows from what has been said in a former part of this opinion on the subject of *res judicata.* The practical result of a decree in favor of the defendant in error would be to eliminate the plaintiffs in error from the list of

claimants, because, in any subsequent contest between
them and the defendant in error for a share in the estate,
they would be met with the plea of *res judicata* on the
question of his mother's marriage with the intestate, which
is decisive of his right to inherit to their exclusion. It is
not difficult to see how the witness must have a direct legal
interest in a result of that kind. In a contest between
her and the plaintiffs in error for a share in the estate,
she is concluded, as we have seen, by the adjudication in
the proceeding had for the appointment of an administra-
tor, wherein it was adjudged that she had never been
married to the intestate. But an estoppel by judgment,
like an estoppel of any other kind, must be mutual. That
is to say, a judgment which is not binding on both parties
to a proceeding, is binding on neither. We have already
seen that the judgment in that proceeding is not binding
on the defendant in error; therefore, in a contest between
him and the witness in regard to the estate, such adjudica-
tion would not be binding upon her, and would leave the
question of her marriage with the intestate open to in-
quiry. In short, if the present proceeding result in a final
decree in favor of the defendant in error, it would elimi-
nate from the list of claimants the only parties who may
successfully invoke the doctrine of *res judicata* against the
witness, and would leave her free to contest her claims
with the successful party, unhampered by such adjudica-
tion. That she has a direct legal interest in such result
seems too clear to admit of argument. Besides, this pro-
ceeding is not exclusively between the plaintiffs in error
and the defendant in error. It is a proceeding *in rem,*
and in such proceeding it is the duty of the court to pro-
tect the interests of all the parties, whether actually before
the court and participating in the litigation, or otherwise,
and render a decree in accordance with the evidence.
Compiled Statutes, ch. 23, sec. 289 (Annotated Statutes,
5154. If the evidence justifies a finding for the defendant
in error, the evidence which would warrant such finding
would also warrant a finding that the witness is entitled to

a share of the personal estate as surviving widow of the intestate. Compiled Statutes, chapter 23, section 176 (Annotated Statutes, 5042). With the plaintiffs in error out of the contest, as they would be by a finding in favor of the defendant in error, there would be no one left, as we have seen, who could successfully invoke the adjudication in the proceeding for the appointment of an administrator against her claim as such widow, and it would be the duty of the court to assign her a due portion of the estate as widow of the intestate, which would at least give her the right of possession as against the administrator. There is no doubt in our minds that the reception of her evidence was error, and as the decree is based almost exclusively on her evidence, the prejudicial character of the error is obvious.

Other errors are assigned and argued, but what has already been said dispenses with the necessity for their consideration.

For this error in the reception of evidence just noticed, it is recommended that the former judgment of this court, reversing the judgment of the district court, be adhered to.

GLANVILLE and BARNES, CC., concur.

By the Court: The conclusions reached by the commissioners are approved, and it is ordered that the former judgment of this court, reversing the judgment of the district court, be adhered to.

JUDGMENT OF REVERSAL ADHERED TO.

The following opinion on second rehearing was filed October 5, 1904. *Judgment of reversal adhered to:*

1. Administrator Not Adverse Party in Contest to Establish Heirship and for Distribution. In a contest between rival claimants seeking to establish heirship and have distribution of the estate of a decedent, the administrator of such estate has no official interest. As the representative of the deceased person he is not an adverse party to any of the claimants in the controversy.

2. Marriage: PROOF. An existing agreement between a man and

woman to marry at a future day conclusively negatives the claim of a marriage *per verba de præsenti* between the same parties.

3. ——: ——. Marriage *per verba de futuro cum copula* is not consummated unless the copula is had in fulfilment of the future agreement.

4. ——: ——. An agreement to live together as husband and wife, made with the intention of being carried into effect, is not sufficient to constitute a common law marriage, unless it is acted upon by the parties living together as husband and wife.

5. **Evidence.** Evidence examined, and *held* not sufficient to establish a common law marriage.

OLDHAM, C.

This case is before us on a second rehearing. Each of the former opinions recommended a reversal of the judgment of the lower court, but for different reasons; and as the case is again before us for a general review of the entire proceedings in the court below, we shall state such facts appearing in the record as are necessary to an understanding of the conclusion which we shall presently reach.

On the 3d of February, 1895, one Hans C. Sorensen departed this life intestate, leaving an estate of the value of about $20,000. Due administration was had thereon, and the present controversy is to determine who is entitled to receive this estate; that is, who are the heirs at law of the intestate. The brothers and children of the sisters of the deceased, claim to be his only heirs at law, and as such filed a petition in the probate court for the distribution of the estate to them. In this proceeding, an infant appeared by guardian and filed an answer and cross-petition, in which the relationship of the petitioners to the deceased is admitted, but a general denial is made of every other fact therein and for affirmative relief. It alleges that he, the infant, is the minor son and only heir at law of the deceased, the issue of a marriage between the deceased and one Ellen Ferguson.

In the district court, the cross-petitioner was allowed the right to open and close. This ruling was predicated

upon a purported admission made in open court, as well as the admissions of the answer. At the beginning of the trial, counsel on behalf of the defendant stated that they admitted of record that the petitioners were entitled to the estate, unless it is proved that the deceased intermarried with Ellen Ferguson, and that the cross-petitioner is the issue of said marriage and the legitimate son of the deceased, as alleged in the cross-petition. It is elementary that an infant can not make admissions, nor can his guardian or attorney do so for him; hence this ruling can not be aided by any of these purported admissions. The question, then, is, to whom did the right to open and close belong as a matter of right, treating the allegations of the petitioners as being denied, which under the circumstances must be done? We think that the learned commissioner who wrote the preceding opinion in this case (*ante*, p. 490) rightly solved this question, and we approve the reasoning and the conclusion reached by him, that under the issues in this case the right to open and close "must yield to the sound discretion of the trial court."

It is next urged that the judicial contest (56 Neb. 729), between the alleged wife and the petitioners over the appointment of the administrator of this estate is an adjudication of the status of the alleged wife and this incidentally determined the heirship of the infant. This subject received careful and considerate attention at the hands of the learned commissioner who wrote the former opinion, and whose able elucidation we approve, as well as the conclusion reached, that "so far as his rights in these proceedings are concerned, he is not a privy to the former adjudication of the question of the marriage between his mother and the intestate, and is not bound by it." *Ante,* p. 490.

The mother of the infant was permitted, over the objections of the petitioners, to testify to conversations and transactions had with the deceased. The purpose of this controversy was to establish a common law marriage between herself and the intestate. It is claimed that she

was incompetent by reason of the statute (Code of Civil Procedure, sec. 329), which provides that "no person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness." It may be conceded that the witness was interested, and the testimony is of conversations and transactions had between the witness and the deceased; yet, unless the adverse party is the representative of the deceased person, the evidence is not within the ban of the statute.

This question has been considered upon the point in issue in *McCoy v. Conrad*, 64 Neb. 150, and the court said (p. 154) : "If a party is so placed in a litigation that he is called upon to defend that which he has obtained from a deceased person, and make the defense which the deceased might have made if living, or to establish a claim which the deceased might have been interested to establish if living, then he may be said, in that litigation, to represent a deceased person; but where he is not standing in the place of the deceased person, and asserting a right of the deceased which has descended to him from the deceased, that is, where the right of the deceased himself, at the time of his death, is not in any way involved, and the question is, not what was the right of the deceased at the time of his death, but, merely, to whom has the right descended; in such a contest, neither party can be said to represent the deceased."

Tested by the above rule, it is clear that neither the petitioners nor the cross-petitioner can be said to be the representative of the decedent in this action. But it is insisted that the administrator is, and as against him the testimony is within the bar of the statute. The administrator can have no interest by virtue of his office in the result of this action. It will not take from nor add to the estate. He is now a mere stakeholder, and the sum of his official duties is to pay over, that is, distribute, the pro-

ceeds of this estate as the court may direct. The purpose of this action is to ascertain to whom it shall be distributed. As said in a former opinion (*ante*, p. 490) : "They (the claimants) occupied a position analogous to that of rival claimants for the same fund, who have been brought before a court of equity by a bill of interpleader, requiring them to interplead for the fund, in order that their respective rights may be ascertained and determined and the plaintiff exonerated." This is not the administrator's controversy; it belongs to the rival claimants, and the office should not be used by either party as a rampart to fight behind. The witness, we think, was competent to testify in this action. *Bollinger v. Wright*, 143 Cal. 292, 76 Pac. 1108.

This brings us to what we now deem the essential question in this controversy, and one which heretofore has not been considered. Does the evidence in this record establish a common-law marriage between the mother of the infant and the intestate?

There was a time, perhaps, when the doctrine of a liberal construction of the testimony and slight proof of a common-law marriage subserved a useful purpose; but if it ever did, that time is long since past. There is nothing to be said in its favor now. Especially is this so in this state, where the legislature has undertaken to provide for the formal solemnization of the marriage rites, if not in public, at least in the presence of witnesses, and have the fact of the marriage preserved in records provided for that purpose by the state. This ancient doctrine is alien to the ideas and customs of our people. It tends to weaken the public estimate of the sanctity of the marriage relation. It puts in doubt the certainty of the rights of inheritance. It opens the door to false pretenses of marriage and the imposition upon estates of supposititious heirs. It places honest, God-ordained matrimony and mere meretricious cohabitation too nearly on a level with each other. In view of these consequences, that are apparent to all, it seems to us that grave considerations of public policy require us to closely scrutinize the testimony offered and the

proof adduced in support of every common-law marriage, alleged to have been consummated in this state.

It appears from the record that the intestate lived for a number of years in the town of Ord; that he was a bachelor, who lived alone and did his own housekeeping; that at the time of this alleged marriage he was about fifty years of age; that the woman was a widow, aged about forty years, and lived, together with her children, about a block away; that she did laundry work and house-cleaning for her neighbors, including the intestate. These matters are mentioned merely to exhibit the surrounding conditions of the parties. It may be well to observe here that if this alleged husband, and admits that she and the intestate had of the woman alone. There is none other. In her direct examination she testifies that the intestate, at his house, about the middle of October, 1894 (a more exact date she would not give), made a verbal proposal of marriage to her, which she accepted, and that she and the intestate then and there agreed henceforth to be husband and wife; that this marriage was to be kept secret; that she went home and lived with her children as before; that about a week after they had sexual intercourse, which was occasionally indulged in at times thereafter; that the result of this intercourse is the infant who is the cross-petitioner in this action; and that intestate gave her from time to time small sums of money.

On cross-examination she admits that she never told any one of this marriage; that she signed her children's school report in her former name; that she received aid, provisions and fuel from the overseer of the poor during the winter after the marriage and in the lifetime of her alleged husband, and admits that she and the intestate had agreed to be married on the Wednesday of the week that he went to Lincoln and there died; that she had told her neighbors, Mrs. Colby and Mrs. Briley, that she was going to be then married; and that she had engaged Mrs. Briley to keep her children until after the marriage ceremony was performed; that the intestate was in bad health, and that

he went to Lincoln for medical treatment; that she did not know at the time that he had gone, and she had not seen him for some days before his departure. The further record in this case is in the same condition as the record that was before this court upon the first contest (56 Neb. 729), of which Mr. Commissioner RAGAN then said: "The record contains no evidence of either Sorensen or Mrs. Ferguson having ever told or claimed to any one that they were married. At no time or place did either one of them introduce, speak of or hold out the other as husband or wife. The parties did not cohabit together after their marriage, but each continued to occupy their respective places of residence as before. No writing, note, memorandum, or verbal acknowledgment or statement of this marriage appears to have been made by either of the parties thereto." This excerpt expresses the true condition of the present record on this subject.

From this evidence it would seem clear that there was no marriage *per verba de præsenti*. The fact that she and the intestate had agreed to get married on a future day conclusively negatives the claim of a *de præsenti* marriage. There could not be a marriage consummated and a marriage in expectancy at the same time between the same parties, and the evidence in the record is uncontroverted that there was a marriage in expectancy between the parties at the time of the intestate's death.

Was there a marriage *per verba de futuro cum copula?* This must be answered in the negative for the same reason; that is, so long as the marriage is in expectancy, it can not be said to have been consummated. Bishop in his work on Marriage and Divorce, vol. 1, sec. 254, says: "The marriage by consent *per verba de futuro cum copula* does not differ from any other informal marriage. It is, in effect, and in its essence, a marriage by consent *de præsenti;* and the common method of designating it is only for convenience, and as indicating the sort of evidence by which it is established; so, of course, its consequences are, by all opinions, precisely the same as those of marriage by consent

*per verba de præsenti.*" In the preceding section (253) Mr. Bishop defines the doctrine of this species of marriage. He says: "It is, that, where parties are under an agreement of future marriage, if then they have copula, which is lawful in the marriage state alone, they are presumed, *in the absence of any showing to the contrary,* to have arrived at the period of actual marriage, or to have transmuted their future to present promise; because the law always leans to the good, rather than the evil, construction of equivocal acts."

It is said in Stewart, Marriage and Divorce, sec. 87: "In states where no marriage celebration is necessary, and when such contract is followed by sexual intercourse between the parties, the law, so as not to presume fornication, presumes that parties who have promised to marry mean sexual intercourse following such promise to be the consummation of such agreement. But this presumption may be rebutted by any facts which show that the parties knew or intended their intercourse to be illicit, as where at the time they were looking forward to being married with a ceremony." See, also, *Peck v. Peck,* 12 R. I. 485; *Fryer v. Fryer,* Rich. Eq. Cas. (S. Car.) 85.

In *Stoltz v. Doering,* 112 Ill. 34, it is said that at common law the fact of sexual intercourse after an agreement to marry at a future day does not constitute marriage, and that the copula must have been in fulfilment of the agreement to marry.

From these authorities, it appears that the law, in the absence of evidence, raises the presumption that by the act of copula the parties then and there intended to consummate their existing agreement to marry; that is, to convert the future agreement into a present consummation. This is the whole doctrine of marriages *de futuro cum copula.*

There is no difference in the basic principles of the marriage contract from any other; the minds of the parties must meet, and the agreement to marry must be made. The time when the marriage shall take place may be the present, or may be in the future. If in the future, there is not

a present marriage, but an agreement to marry, and the mere act of copula does not change the agreement. The law presumes, in the absence of evidence, that the parties themselves changed the terms of the contract from the future to the then present. When, however, the evidence establishes, as in this case, that during the period of the sexual intercourse between the parties, they had set the day in the future, and were making preparations for and intending to solemnize their marriage rites in accordance with the statute of this state, there is no ground for this presumption, and the law will not indulge in it.

Furthermore, we think the evidence insufficient upon another ground. It fails to show that the parties lived together as husband and wife; in fact, it affirmatively shows that they did not so live, nor is there any act or deed of the parties that can be said to be a public recognition of the marriage relation.

It is said in *Lorimer v. Lorimer,* 124 Mich. 631, 635, 83 N. W. 609, that "Our courts have gone a good way to sustain the validity of a marriage where an agreement to live and cohabit together as husband and wife has been made and acted upon. But at no time has it been said that, in the absence of a valid marriage ceremony, a simple agreement to live together, even though the parties intended to carry out the agreement, is sufficient to constitute a valid marriage, unless acted upon by living together and cohabiting as husband and wife." Of like effect are the holdings in *People v. McQuaid,* 85 Mich. 123; *Maryland v. Baldwin,* 112 U. S. 490; *Commonwealth v. Stump,* 53 Pa. St. 132; *Hiler v. People,* 156 Ill. 511; *Cargile v. Wood,* 63 Mo. 501.

In *Maryland v. Baldwin, supra,* it is held that "In the absence of statutory regulations, a marriage is a civil contract and may be made *'per verba de præsenti'*; that is, by words in the present tense without attending ceremonies, religious or civil, but some public recognition of it is necessary as evidence of its existence." The reason for this is given in the opinion of Mr. Justice Field in which he says: "The protection of the parties and their children and con-

siderations of public policy require this public recognition." It is further said in that case that this public recognition may be made in any way which can be seen and known by men, as living together as man and wife, or by public conduct which acknowledges the marriage relation.

We think that the requirement that the parties assume the marriage relation, is reasonable. It is based upon a sound regard for the public welfare. Public policy forbids all things that are inimical to the public welfare and the due administration of justice. To establish a marriage in a case like this on the evidence in this record would be to open the door to fraud and perjury, and to expose every estate to the rapacity of designing adventurers. This would be against every policy of the law, and consequently should not be done.

We therefore recommend that the former opinion be adhered to.

AMES and LETTON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former opinion is adhered to.

FORMER JUDGMENT ADHERED TO.

The following opinion on third rehearing was filed May 3, 1905. *Judgment of reversal adhered to:*

1. **Common Law Marriage:** PRESUMPTION. There is a presumption of the existence of marriage which arises from cohabitation and holding each other out to the world as husband and wife, and public policy will not prevent a child born of such relations from availing himself of such presumption in a contest as to his legitimacy.

2. ———: CONSISTENT CONTRACTS. A contract for a marriage in the future can not of itself constitute marriage, and if its language imports that the marriage is to take place in the future, such contract will not constitute a marriage *de præsenti*. But two contracts, one constituting a present marriage and the other providing for a future public celebration thereof, are not inconsistent.

3. **Heir as Representative of Deceased.** The heir is not, in all litigation concerning the estate, the representative of the deceased,

To represent the deceased, within the meaning of section 329 of the Code of Civil Procedure, the heir must stand in his place so as to uphold a right which the deceased had at the time of his death.

4. **Marriage Contract:** EVIDENCE. A contract between a man and woman, competent to marry, in which it is by them mutually agreed by that contract to then become husband and wife, constitutes a valid marriage; but when there has been no subsequent cohabitation, admissions of the parties, or other evidence, except the unsupported oath of one of the parties after the other party is deceased, there is a presumption against secret marriages which must be considered as evidence against the existence of the contract. Our marriage laws aim at publicity; secret marriages are not favored.

5. **Practice:** DEMURRER TO EVIDENCE. When in a jury trial a party moves the court to instruct a verdict in his favor, which is overruled and he is compelled to submit the matter to the jury, he may assist the court in a proper submission of the matter without thereby estopping himself to afterwards contend that a verdict against him is not supported by the evidence. In such case the rule of *American Fire Ins. Co. v. Landfare*, 56 Neb. 482, does not apply.

SEDGWICK, J.

1. Upon this motion for a rehearing both parties have filed additional briefs, and oral argument was had before the court. The principal contention of the defendant in error upon this motion is that the last opinion is wrong in holding that the evidence is insufficient to support the finding of the jury. It was said in that opinion that this is "the essential question in this controversy." The former opinion in so far as it appears to reflect upon the position of this defendant in error in this litigation should be modified. As was said by the supreme court of Indiana in *Teter v. Teter*, 101 Ind. 129, 51 Am. Rep. 742: "It is important to ascertain the status of the person who asserts the validity of the marriage. In this case the person who does this is free from all taint of wrong; he is asserting his mother's innocence of evil, and maintaining his right to property acquired by his father. If any right is lost to him it results from no wrong of his, but solely from the misconduct of another." If the alleged marriage is fol-

lowed by cohabitation and holding each other out to the world as husband and wife, the presumption of the existence of the marriage which arises from these facts ought to be indulged in favor of a party who is himself necessarily innocent in any view of the case.

2. Again, it is said in our last opinion (*ante,* p. 500): "The fact that she and the intestate had agreed to get married on a future day conclusively negatives the claim of a *de præsenti* marriage. There could not be a marriage consummated and a marriage in expectancy at the same time between the same parties, and the evidence in the record is uncontroverted that there was a marriage in expectancy between the parties at the time of the intestate's death." This is a correct statement of the law only in the sense that a contract for a marriage in the future is not such a contract as will of itself constitute marriage, and that the fact that the language of the contract imports that the marriage shall take place at some future time is inconsistent with construing that language to mean that the contract is for a marriage *de præsenti.* It was, of course, not intended to say that after a valid contract of marriage had been entered into, the parties could divorce themselves by agreeing to be married in the future, or that it was inconsistent for the parties to make two contracts, one that they should be married in the present and become husband and wife and the other that they should celebrate that marriage publicly at some future day. We have upon this motion been required to reexamine the whole record and it does not appear that the language last quoted from the opinion is entirely applicable to the facts as disclosed in this record.

3. It is insisted that the evidence of the alleged wife of the deceased should have been excluded. The first ground for this contention is that the litigation between her and the defendants in error here in regard to the appointment of the administrator of this estate is an adjudication of her status, and is binding upon all parties. We think that this contention is fully met by the reasoning of Mr. Com-

missioner Albert in the second opinion herein, which is reported, *ante,* p. 490. The second ground for this contention is, we think, likewise untenable. It is urged that this witness was rendered incompetent by the provisions of section 329 of the Code of Civil Procedure, but this court is committed to the construction of that section which is given it in the last opinion (*ante,* p. 500). It was there shown that the adverse party in this litigation is not the representative of the deceased in the sense intended in the section of the statute referred to, and the rule stated in *McCoy v. Conrad,* 64 Neb. 150, is there quoted as follows: "If a party is so placed in a litigation that he is called upon to defend that which he has obtained from a deceased person, and make the defense which the deceased might have made, if living, or to establish a claim which the deceased might have been interested to establish, if living, then he may be said, in that litigation, to represent a deceased person; but where he is not standing in the place of the deceased person, and asserting a right of the deceased which has descended to him from the deceased (that is, where the right of the deceased himself, at the time of his death, is not in any way involved), and the question is, not what was the right of the deceased at the time of his death, but merely to whom has that right descended, in such a contest neither party can be said to represent the deceased."

The brief of the petitioners presents a very able argument upon this question, but it is predicated upon discussions from other jurisdictions based upon statutes essentially different from our own. Several decisions from the supreme court of Illinois are presented and strongly argued, but the difference between the two statutes is not discussed. Indeed it seems to be assumed that the statutes are identically the same. The statute of that state (ch. 51, sec. 2) is: "No party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion, or in his own behalf, by virtue of the foregoing section, when

any adverse party sues or defends as the trustee or conservator of any idiot, habitual drunkard, lunatic or distracted person, or as the executor, administrator, heir, legatee or devisee of any deceased person, or as guardian or trustee of any such heir, legatee or devisee, unless when called as a witness by such adverse party so suing or defending," with other exceptions.

"The heir of a deceased person" may be and often is the representative of the deceased in litigation that arises concerning the estate, but as is plainly shown in *McCoy v. Conrad, supra,* the heir is not in all litigation concerning the estate of the deceased the representative of the deceased within the meaning of our statute. It is only when he stands in place of the deceased so as to uphold a right that the deceased had at the time of his death that he may be said to represent the deceased. When the right of the deceased at the time of his death is not in controversy, but the question is to whom does that right descend, the heir, although a party to the litigation, does not in that action represent the deceased within the meaning of the statute. Under the Illinois statute if the heir is the adverse party the statute applies. In the case at bar it is not because the witness was an heir of the deceased that she was allowed to testify, but because the adverse party does not represent the deceased. It does not appear from the opinion in *Laurence v. Laurence,* 164 Ill. 367, 45 N. E 1071, which was one of the cases principally relied upon, that this witness would not there have been allowed to testify since she was not testifying "of her own motion, or in her own behalf" which is by their statute made an essential element of disqualification. Under the construction of our statute now well established this witness was competent to testify.

4. We think also that it is correctly assumed in the opinion that a contract between the parties in which the minds of the parties understandingly meet, and in which it is by them mutually agreed by that contract to become husband and wife, is sufficient to constitute a valid mar-

37

riage. It must also be borne in mind that this evidence has been submitted to the jury under proper instructions, and that by their verdict they have declared that these parties made such contract and became husband and wife, and the familiar rule must be applied that such verdict will not be set aside unless it clearly appears that it is not supported by the evidence. What then shall be said of this evidence as supporting this verdict? It is based wholly upon the evidence of the alleged wife of the deceased. No human being had any knowledge of it except this witness, and the deceased whose evidence was barred by death. No circumstance or condition disclosed by this evidence declares the existence of such a contract. The alleged wife had everything to gain by establishing its existence. She has no fear of contradiction, and cross-examination presents no terrors.

In a similar case the supreme court of Minnesota suggested the increasing number of common law widows raising claim (in many instances doubtless fraudulently) to the estates of deceased men of wealth, and intimated that legislation to further protect estates from such depredation might be justifiable. *Hulett v. Carey,* 66 Minn. 327, 69 N. W. 31.

This witness testified that she was married to Mr. Sorensen by an "agreement." "He promised to be my husband and I promised to be his wife." This agreement took place "at his home." She lived at that time "across the street from there." "He requested me to come, he wanted to have a talk with me." "He called at my house and requested me to come." When she went to his house he told her he was tired of living alone, he did not believe in a public ceremony, and after some other conversation of that nature said "I promise to be your husband if you will promise to be my wife." To this she agreed; she could not state the date of this contract except that it was "about the middle of October, 1894." It was also agreed that they should continue living separately and just as they had been living. She says, "I understood that I was his wife from that time on."

After his death she sought to establish an interest in his property on the ground that they were engaged to be married; she spoke of this to several persons, and did not claim that she was his wife, but alleged that he had agreed to marry her. If she knew herself to be his lawful wife, and had consented to keep it secret until a public ceremony could be performed, it is difficult to understand why, when death had prevented the public ceremony, she should fail to at once declare the truth. She did not assert that she had ever been his wife until after several attempts to obtain his property had failed, and she had learned that only as his widow could such an attempt succeed. Further details of the facts disclosed by this record may be found in the former opinions.

Our marriage laws aim at publicity. To allege that these laws have been disregarded, and that a secret marriage has been entered into, is to cast suspicion upon the conduct of the parties. Subsequent cohabitation, and holding each other out to the world as husband and wife furnish strong corroboration of the existence of the contract. Where these elements of proof are wanting, and, one party being deceased, the existence of the contract rests wholly upon the unsupported testimony of the other party, the presumption raised by the circumstances amounts to proof opposed to the marriage contract itself. We do not think that the evidence of this witness is so direct, certain and consistent as to establish the contract of marriage in the face of this presumption. *Gibson v. Gibson,* 24 Neb. 394; *Bailey v. State,* 36 Neb. 808; *University of Michigan v. McGuckin,* 64 Neb. 300; *Eaton v. Eaton,* 66 Neb. 676, are not, when rightly considered, inconsistent with the views herein expressed.

5. When this defendant in error had concluded his evidence upon the trial in the court below, a motion was made by the plaintiffs in error that the court instruct the jury to return a verdict in their favor. This motion was overruled. Afterwards the plaintiffs in error offered their evidence and, when the evidence was closed, requested the

court to submit special questions of fact to the jury, one of them being "Was Mrs. Ferguson before the death of Hans C. Sorensen ever lawfully married to him?" and other similar questions. It is now contended that the evidence introduced by the plaintiffs in error "materially strengthened that of defendant in error," and that as the plaintiffs in error did not renew their motion to direct a verdict in their favor they must be held by requesting the court to submit the question to the jury to have waived their objection that there was not sufficient evidence, and that therefore that question ought not now to be considered in this court. If, after their motion to direct a verdict, there had been substantial evidence tending to prove the alleged marriage, this argument of the defendant in error would have great weight. The testimony relied upon as corroborating evidence upon this point was developed upon the cross-examination of a brother of the deceased.

He testified that the deceased had in August, about two months before the time of the alleged marriage, and while intoxicated, said that he was "tired of baching and thought of getting married" and was "thinking of a widow with three children." This might or might not have referred to Mrs. Ferguson. No time was mentioned, and if his language was serious, it was too indefinite to be of any value as evidence. There could be no reason to suppose that a verdict would be directed on account of this testimony when it had been refused upon the evidence as it stood without it.

In *American Fire Ins. Co. v. Landfare*, 56 Neb. 482, it was said: "One who tenders an instruction which is given, which assumes the existence of evidence to establish an issuable fact in the case, cannot afterwards be heard to assert that there was no evidence received tending to prove such fact." It does not appear that the defendant in that case was compelled to submit the matter in question to the jury, and having on its own motion requested the court to submit a question of fact, it was not allowed afterwards to say that there was no evidence upon which to submit it.

But when, as in this case, a party moves for a verdict in his favor because there is no evidence to support one against him, and, his motion being overruled, he is compelled to submit the matter to the jury, he may assist the court in a proper submission of the matter without estopping himself to afterwards contend that a verdict against him is not supported by the evidence. The rule of *American Fire Ins. Co. v. Landfare, supra,* is also held in *Iowa Savings Bank v. Frink,* 1 Neb. (Unof.) 14; *Missouri P. R. Co. v. Fox,* 60 Neb. 531, and other cases. This rule is based upon the idea that when a party, by his language or conduct in the trial, induces the court to take a certain action, he can not afterwards in the same case say that there was no foundation for such action. It does not apply in this case.

We think the conclusion reached in the former opnion is right and should be adhered to.

FORMER OPINION ADHERED TO.