170    SUPREME COURT OF INDIANA.

Arnold *v.* The State—Zug and Others *v.* Laughlin and Others.

————————⊗————————

ZUG and Others *v.* LAUGHLIN and Others.

WRIT OF *Venditioni Exponas.*—It is the right of an execution plaintiff, on the return of an execution against the property of the execution defendant levied upon, but not sold, to have a *vendi,* with a conditional *fieri facias* added thereto, but the writ is not void if it is omitted. Page 174.

LEVY—LIEN OF.—Under sections 453-454, 2 G. & H. 244, when any property levied on remains unsold, and the sheriff returns the execution and appraisement, stating in his return the failure to sell, and the cause of the failure, the lien of the levy upon the property shall continue. The continuance of the lien is not limited by time, but an unreasonable delay would be a matter of grave consideration in a race of diligence between execution plaintiffs. Page 177.

LEVY—LIEN OF.—If a creditor seize the goods of his debtor on an execution, and suffer them to remain in his hands, the execution is deemed fraudulent and void as against a subsequent execution. Page 178.

APPEAL from the *Floyd* Circuit Court.

GREGORY, J.—On the 28th of *September*, 1861, *Clayton French, Samuel H. French,* and *Edwin Morey,* whom we shall designate as *French & Co.,* recovered a judgment, in the Court of Common Pleas of *Floyd* county, against *John Bushnell,* for $2,251.43; on the 29th of *October* following, two other judgments were rendered against *Bushnell* in the *Floyd* Circuit Court—one in favor of *James Laughlin* for $3,359.99, the other in favor of *Charles G. Hussey* and *Thomas M. Howe* for $633.10. Executions were issued on these judgments, and placed in the hands of *Wilcoxson,* sheriff of *Floyd* county, as follows: on that in favor of *French & Co., December* 2, 1861; on that in favor of *Laughlin, November* 29, 1861; and on that in favor of *Hussey & Howe, December* 6, 1861.

By virtue of these three executions, and some five others not necessary to notice, the sheriff, on the 23d day of *December*, 1861, made the following levy: "By virtue of this, etc., I have this day levied on the following described property; to-wit: all the stock in trade of every kind and description of the defendant, *John Bushnell,* now in the brick building on *State* street, between *Main* and the river, including one fire-proof safe and office fixtures, taken as the property of *John Bushnell,* to satisfy," etc.

*Bushnell* was a ship-chandler, and his stock thus levied on consisted of iron, cordage, glass, and a great variety of other articles used in building and fitting out steamboats.

This levy was made under the direction of the attorneys

of *Laughlin* and of *French & Co.*, and was accompanied by an inventory which described the various articles, but did not specify the quantities of each.

By an arrangement made between the attorneys of the parties having executions in the sheriff's hands and *Bushnell*, the latter was to retain the possession of the goods levied on, continue in trade, sell the stock in the regular course of business, and apply the proceeds to the payment of the executions according to their priority. Accordingly, these three executions were returned by order of the attorneys for the plaintiffs in the several judgments as follows: *Laughlin's, May* 26; *French & Co.'s, May* 28; and *Hussey & Howe's, May* 29, 1862. On the day *Hussey & Howe's* execution was returned, a *vendi* was issued upon their judgment; and on the following day like writs were issued in favor of *Laughlin* and of *French & Co.* These last three writs were returned by the sheriff without any sale of the property, upon the orders of said attorneys, as above stated; *Laughlin's* on the 17th, and *Hussey & Howe's* on the 24th day of *November*, 1862.

On the 26th of *November*, 1862, *Hussey & Howe* had an *alias vendi* issued on their judgment, and on the 13th day of *December* following like *alias* writs were issued on the judgments of *Laughlin* and of *French & Co.*

These several writs, issued after the first set, on the judgments in favor of *Laughlin, French & Co.*, and *Hussey & Howe*, instead of being the executions directed by statute, (2 G. & H. 244, secs. 453, 454,) were the ordinary writs of *venditioni exponas.*

On the 28th day of *January*, 1862, *Christopher Zug, Charles H. Zug, Jacob Painter*, and *Benjamin H. Painter*, who, for brevity, may be styled *Zug & Co.*, recovered two judgments, in the Court of Common Pleas of *Floyd* county, against *Bushnell*, amounting to $1,077.85, and on the 13th of *January*, 1863, sued out writs of *fieri facias* thereon, which, with the writs of *vendi* on the judgments in favor of *Laughlin, French & Co.*, and *Hussey & Howe*, came to the

hands of *Stewart Sandford*, successor of *Wilcoxson*, sheriff of *Floyd* county.

On the 22d day of *January*, 1863, *Hussey & Howe* abandoned their *vendi*, and procured and delivered to said sheriff a *fieri facias* upon their judgment.

In the mean time, *Bushnell* had carried on his trade, buying and selling, and had to some extent mixed new goods with those levied on by *Wilcoxson*, the former sheriff.

*Sandford*, the present sheriff, was directed to levy the writs of *fieri facias* of *Zug & Co.*, as well as the one in favor of *Hussey & Howe*, which afterward came to his hands on the new goods. But having nothing to guide him, other than the recitals of the writs of *vendi*, *Sandford* was unable to distinguish the new from the old goods. It should be stated in this connection that the inventory made by *Wilcoxson* was not recited in the writs of *vendi*, nor did the same ever come to the knowledge of *Sandford*.

The sheriff, *Sandford*, on the 13th day of *January*, 1863, levied the writs of *fieri facias* of *Zug & Co.*, on the entire stock in trade of *Bushnell*, including the old as well as the new goods; caused a proper inventory and appraisement to be made thereof; advertised and sold the same on the 9th day of *February*, 1863, by virtue of these writs of *fieri facias*, and the one in favor of *Hussey & Howe*, and the writs of *vendi* of *Laughlin* and *French & Co.*, and some others that need not be named, and realized from such sale $4,353.24; $4,157.80 of which was paid into the *Floyd* Circuit Court by the defendant *Sandford*, that being the net avails of such sale after deducting costs, etc.

This suit is brought by *Laughlin* against *Sandford*, *French, French & Morey, Zug & Co.*, and *Hussey & Howe*, together with *The New Albany Insurance Company*, who disclaimed all interest in the subject matter in controversy.

The relief sought is an order of distribution of the proceeds of the sheriff's sale among the parties entitled thereto.

The court below ordered the clerk to pay: 1. The costs of this action; 2. Render to *Zug & Co.* and to *Hussey & Howe* the sum of $450, and a porportionate share of the costs to be applied upon their writs in the order of the priority; and, 3. Render and pay over the balance remaining in his hands unto *Laughlin* and *French & Co.*, to be applied upon their writs respectively in the order of their priority.

*Zug & Co.*, and *Hussey & Howe*, appeal to this court.

The evidence is set out in the record. We are at a loss to see upon what principle the ruling of the court below can be sustained.

The appellees have filed no brief, and we are left to infer, from the argument of counsel for the appellants, the questions mooted in the Circuit Court.

There were several questions presented in the progress of the trial. One is that the writs of *vendi*, issued in favor of *Laughlin* and *French & Co.*, are void for not complying with the statute on that subject, and for this reason, *Hussey & Howe* and *Zug & Co.* objected to their introduction in evidence; the court below overruled the objection, and admitted them in evidence. We think this ruling is right; this statute is directory. It is the right of an execution plaintiff, on the return of an execution against the property of the execution defendant, levied but not sold, to have a *vendi*, with a conditional *fieri facias* added thereto, so as to give a more complete remedy; but it was evidently not the intention of the legislature to make a writ *void* that did not, in this respect, comply with the statute.

Another is, that the levy made by sheriff *Wilcoxson*, by virtue of the executions in favor of *Laughlin* and *French & Co.*, is void for uncertainty in not sufficiently describing the goods levied upon. We think this objection not valid. The description taken in connection with the inventory and appraisement, in our opinion, is sufficient, and was perhaps as definite as the nature of the

subject matter would admit of; at least it is not void for uncertainty.

We have looked through the evidence, and find nothing that, in our opinion, tends to connect *Zug & Co.* with the arrangement by which *Bushnell* was left in possession of the goods after the levy, with power to sell and dispose of them in the usual course of business, and apply the proceeds, etc.

It is true that *Bushnell*, on the 21st day of *September*, 1861, executed a deed of trust to one *William B. Lent*, assigning to him his entire stock in trade, to secure certain creditors of *Bushnell*, among others *Zug & Co.*; but there is no evidence that *Zug & Co.* ever gave their assent to this assignment, and indeed, so far from doing so, long after this trust was created for their benefit, they bring suit on their claims against *Bushnell*, and proceed to judgment. There is evidence tending to show, that the cloud created by this assignment was one of the reasons for the delay in selling the goods levied upon by virtue of the executions in favor of *Laughlin* and *French & Co.*; but *Zug & Co.* in no way were instrumental in bringing about that delay. Whatever may have been done by the attorneys, who obtained their judgments, could not, in our opinion, prejudice them. The power and duty of an attorney are plainly prescribed by statute. 2 G. & H. 327–328, secs. 771–772. There is no evidence that *Smith & Kerr* had any authority from *Zug & Co.*, other than that of an attorney as such; and, indeed, both *Smith & Kerr* swear that, in making this arrangement for delay, they did not act for *Zug & Co.*, but only for those of their clients having executions in the hands of the sheriff at the time.

On the 24th day of *February*, 1862, *French, French & Morey* brought an action in the Court of Common Pleas of *Floyd* county against *Lent*, to set aside this *assignment* as fraudulent and void as against creditors. The case was continued, from term to term, until the 12th day

of *January*, 1863, when *Bushnell* was made a defendant by an amended complaint. On the 5th day of *February*, 1863, the cause was tried, and this assignment set aside as *fraudulent* and *void.*

We do not see how this proceeding is any legal excuse for the arrangement by which *Bushnell* retained .the possession of the goods levied on, with power to sell and dispose of the same, and apply the proceeds to the payment of the senior execution liens. It was a good reason for taking the goods out of his hands, but not for leaving them under his control, with power of disposing of them. *French & Co.* say to *Bushnell*, you have made a fraudulent assignment of your property, therefore we will leave you in possession, with power of disposition for one year and one month, while we carry on a litigation to set aside your fraudulent act; you have inspired us with a confidence rarely existing between a creditor and his debtor in failing circumstances.

In our opinion, *Hussey & Howe* are not in a condition to be benefited in a race of diligence with the other execution creditors of *Bushnell;* they were parties to the arrangement for delay, and can not be benefited by it; they voluntarily abandoned their levy, and took their chances at the new goods not covered by the old levy. The proof is not clear as to the confusion of goods, nor as to the amount of new goods at the time of the levy of the 13th of *January*, 1863, but we infer that the court below came to the conclusion that, with the use of proper diligence, the new goods could have been distinguished from the old, and that there was realized from such execution sale of the new goods $450, and therefore not enough to pay the executions of *Zug & Co.*, which came to the hands of the sheriff *nine* days before the *fieri facias* of *Hussey & Howe* was issued.

And as we understand the order made by the court below, this $450 under *that* order would go to *Zug & Co.*, as their executions are prior to that of *Hussey & Howe.*

It is claimed that some days elapsed between the return of the writs of *vendi* of *Laughlin* and *French & Co.*, and the issue of the writs of *vendi* under which the sale was made, and that thereby they lost their lien on the goods levied upon. These writs of *vendi* were returned on the 17th day of *November*, and new writs of *vendi* were issued on the 13th day of *December;* twenty-six days elapsed between the return and issue.

Our statute provides that, "when any property levied on remains unsold, it shall be the duty of the sheriff, when he returns the execution, to return the appraisement therewith, stating in his return the failure to sell, and the cause of the failure. *The lien of the levy upon the property shall continue,* and the clerk, unless otherwise directed by the plaintiff, shall forthwith issue another execution, reciting the return of the former execution, the levy and failure to sell, and directing the sheriff to satisfy the judgment out of the property unsold, if the same is sufficient; if not, then out of any other property of the debtor subject to execution." 2 G. & H. 244, secs, 453, 454. By the previous statute, (Revised Statutes, 1843, p. 750, sec. 421,) "such levy and return constituted and continued a lien on the property remaining unsold, by virtue of which the same was held and sold on a writ of *venditioni exponas,* if issued before the return day next after the return day of such previous execution." *Wolf* v. *Wolf,* 4 Ind. 255. The difference between the two statutes seems to be, that the continuance of the lien is limited as to time by the latter, and not by the former.

An unreasonable delay in issuing the *vendi,* under the present statute, would be a matter of grave consideration in a race of diligence between execution plaintiffs; but, in our opinion, the delay in this case of twenty-six days between the return and issue, does not *ipso facto* divest the lien of the executions and levy of *Laughlin* and *French & Co.*

On the question of the race of diligence between *Zug*

*& Co.*, and the other execution creditors of *Bushnell*, we hold the rule to be, "that if a creditor seize the goods of his debtor on an execution, and suffer them to remain in his hands, the execution is deemed fraudulent and void, as against a subsequent execution."

This is the rule in *England*, (1 Lord Raymond, 251; *Edwards* v. *Harben*, 2 Term Rep. 596,) and it has been followed by most of the states.

In the case of *Storm and Another* v. *Woods*, 11 Johns. 109, this rule was applied in the absence of all actual fraud; the court said: "Whether the sheriff is chargeable or not with neglect of duty, depends upon the fact whether his conduct was known or approved of by the assignees of the judgment; and, whether they knew in what manner the levy had been made, may be questionable; but that they did know that the property was left in the possession of *Hilton*, can not admit of a doubt. No actual fraud was intended by them. They undoubtedly supposed they could postpone proceedings under their execution until pressed on by younger ones, and still retain their priority. Motives of humanity might have influenced them to this indulgence; still, it was not warranted by the sound and salutary principles of the common law. The case of *Levy* v. *Wallis*, 4 Dall. 167, decided in the Supreme Court of *Pennsylvania*, which has been referred to, admits the *English* rule to be, as understood and recognized by this court; but it is said that sentiments of humanity, and the peculiar necessities of the country, have induced the court in *Pennsylvania* to depart from it. In that state, however, the soundness of their own rule has been questioned, and much shaken in later cases. See 4 Dall. 168, note 1." In *Kellogg* v. *Griffin*, 17 Johns. Rep. 274, this rule was applied to a case in which the delay under the direction of the execution plaintiff was from *January* to the *May* following.

This rule, somewhat modified and restricted, but broad enough to embrace the facts of the case at bar, is

now recognized in *Pennsylvania*. *Earl's Appeal*, 13 Penn. State Rep. (1 Harris,) 483; *Keyser's Appeal*, 13 Penn. State Rep. 409.

The order of the Circuit Court directing the clerk to pay, 1. The costs of this action; 2. Render to *Zug, Painter & Co.* and to *Hussey & Howe* the sum of $450, and a proportionate share of the costs to be applied upon their writs in the order of their priority, is affirmed, and the residue of said order is reversed; cause remanded to said court, with directions to ascertain the balance due *Zug, Zug, Painter & Painter*, on their judgments and executions for principal, interest, and costs, after the proper application, under the above order, of said $450, and the payment of the proportionate share of costs as above ordered, and then to order said balance so found due them, to be paid in full to said *Zug, Zug, Painter & Painter*, out of said money so paid into court; and that the residue be rendered and paid to said *Laughlin* and *French, French & Morey*, to be applied upon their writs respectively in the order of their priority.

Costs against appellees and *Hussey & Howe*.

*Thomas L. Smith* and *M. C. Kerr*, for appellant.

---

THE HARTFORD FIRE INSURANCE COMPANY *v.* ROSS and Others.