ROSA LEVARA ET AL., APPELLANTS, V. BERNARD MCNENY ET AL., APPELLEES.

FILED MARCH 23, 1905.   No. 13,274.

1. Attorney and Client: SALE TO ATTORNEY, SETTING ASIDE. Where an attorney, by statements and representations made to his clients as to the condition and value of their land, the subject of the litigation, procures the sale thereof to be made to a third party

for whom he is at the same time acting in that capacity, for an inadequate price, and immediately takes a half interest therein for himself, paying one-half of the consideration, a court of equity will set aside the transaction and the conveyances, and restore the estate to the vendors on the repayment of the purchase price, with interest at seven per cent. per annum.

2. **Public Policy.** This rule is not necessarily based on fraud, but is grounded on considerations of public policy, and prevails although the attorney be innocent of any intention to deceive and intends to act in good faith.

3. **Set-Off.** In such a case the vendors may set off the rents and profits of the real estate, if any, which the vendee has collected while holding the title thereto, against the purchase price required to be repaid.

4. **Case Overruled.** The first point of the syllabus in *Levara v. McNeny*, 5 Neb. (Unof.) 318, and so much of the opinion therein as conflicts with the rule announced herein, is overruled.

APPEAL from the district court for Webster county: ED L. ADAMS, JUDGE. *Reversed with directions.*

*F. A. Sweezy, A. D. Ranney* and *Tibbets Bros. & Morey,* for appellants.

*Bernard McNeny* and *R. T. Potter, pro se.*

BARNES, J.

This case when it was before us the first time was heard by department No. 2 of the commission, and in an unofficial opinion written by Commissioner ALBERT it was held that the guardian's deed, which purported to convey the interest of the minor heirs of Wenzel Levara in the land in question to the defendant McNeny, was void, and that said heirs were entitled to recover of the appellees four-sevenths of said estate. *Levara v. McNeny*, 5 Neb. (Unof.) 318. A rehearing was granted on the application of the appellants, and the case has been reargued before the court. On the reargument it was contended that the deeds made by the adult plaintiffs should also have been set aside, and they should have been allowed to recover the land conveyed

thereby to the defendant McNeny, one-half of which it appears was at once conveyed by him to defendant Potter, who paid that proportion of the original purchase price to the appellants. We are unable to make a clearer or more concise statement of the facts than that contained in the opinion of the commissioner, and so no other statement will be attempted.

The main contention of the appellants is that the acts of the defendants, and especially those of defendant Potter, were fraudulent, and that appellants were thereby induced to sell the land to McNeny; while the appellees insist that in the performance of those acts Potter exercised the utmost honesty and good faith. The trial court so found, and refused for that reason to grant the appellants any relief. There appears to be little, if any, conflict in the evidence as to what took place leading up to the guardian's sale of the land to McNeny, and the real question presented is practically one of law. The record shows that the appellants employed one William Sweet of Friendship, Wisconsin, to look after the matter for them; that he wrote to the defendant Potter, an attorney at Red Cloud, in Webster county, this state, where the land was situated, stating, in substance, that the appellants wished to get what they could for it, and inquiring as to its value, or what it would bring in the market. Potter answered Sweet's letter, stating, among other things, that it would be necessary for a guardian to be appointed for the minor heirs, and to take the proper steps to have the land sold by such guardian; concluding his letter as follows: "Did Wenzel Levara leave any debts? I find that there is a large amount of taxes due on this land, and it will be necessary to do something at once. The purchaser at tax sale is now entitled to a tax deed to the premises. 1 have not seen the land, but have been informed that it is worth not less than $500 or $600. Give me all the facts as soon as convenient." Shortly afterwards Potter wrote Sweet another letter, in which he said: "Replying to yours of the 5th inst. relative to the Levara matter, I think you had better procure the

appointment of a guardian for the minor heirs in your county. You can send me an authenticated copy of the appointment, and that will be our authority for the proceedings to sell land in this state. If Levara left no debts, it may not be necessary for administration. When did Levara die? Proceedings to foreclose the tax lien against this land were commenced in our district court on the 2d inst. The petition claims due on taxes the sum of $201.68; delinquent taxes draw interest at the rate of twenty per cent. per annum, which accounts for the large sum due, for no taxes have been paid for ten years. I would advise that you secure appointment of guardian as soon as possible, and we can then sell the land subject to the taxes, and in the meantime I will see that no decree is entered in the foreclosure proceedings. Please advise me how long it will take to secure appointment of a guardian?" On November 25, 1901, Potter again wrote Sweet as follows: "What progress are you making in the Levara matter? I have a client who will pay $500 cash for the interest of the heirs in the land; pay all the taxes, and take his chances with Stephani on his claim of title to the land by adverse possession. If they wish to dispose of the land, here is an opportunity, but my client must know at once. If your clients wish to accept this offer I will forward deeds for their signature at once. As I wrote you in my last letter, I do not think there is anything to the claim Stephani makes of having title to this land, and the heirs can recover possession by bringing an ejectment suit. Our district court convenes next week, the tax case will come up at that time, and I can stand the tax matter off. Will write you as soon as court adjourns." Potter's next letter to Sweet reads as follows: "Replying to your favor of the 27th inst., a general guardian is what should be appointed in your county for the minor heirs of Wenzel Levara. It will not be necessary to have a guardian appointed in this county. All that is needed is that a certified copy of the appointment of the guardian appointed in your county be sent here, and proceedings can then be commenced to sell

the land. As to the tax proceedings: This is a regular foreclosure proceeding, and will cut off the minor heirs just the same as other defendants. I will appear as attorney for the defendants and secure a continuance of the case, if it can be done. The land has increased some in value since it was purchased by Levara. The record shows that he paid $600 for it. As my client is to assume the payment of the taxes the land will cost him over $700. The matter must be attended to at once. If the widow wishes to accept the offer I will prepare and send to you deed for signature. Send me the names of all of the heirs, including that of the widow. Kindly let me hear from you as soon as possible." Thereafter Potter wrote to Sweet another letter, in which he inclosed a quitclaim deed for all of the adult heirs and the widow of Wenzel Levara to sign and return to him. He closed that letter as follows: "Our court adjourned until the 6th of January. I secured a postponement of the tax case until that time. I doubt whether I will be able to secure another continuance, so it will be necessary to act immediately." Shortly thereafter another letter was written by Potter to Sweet acknowledging the receipt of the deeds, and informing him that McNeny's check for $500 had been received by him. He then says: "You ask me to advise you of the amount of taxes due on the land, and costs which have accrued in that case. There is something over $200 involved in the tax case, not including costs. Under the agreement the taxes and costs must be paid by McNeny. * * * It will take me at least sixty days to get authority for the guardian's deed. I had to have a copy of the proceedings before I could file a petition here asking for license to sell real estate. I shall file the petition today, and will keep you advised as to progress. You understand the sale will have to be advertised thirty days, and the sale will have to be confirmed by the court." On the 10th day of December, 1901, Potter again wrote to Sweet advising him that he had filed the petition in the district court praying for a license to sell the real estate in question, and informing him of

what proceedings would be necessary; also inclosing to him a waiver, and an entry of appearance to be signed by the persons interested in the estate. In a letter written by Potter to Sweet, January 3, 1902, he says: "As soon as you send me the waiver I forwarded you a few days ago, I will apply for an order to sell. We will then advertise and sell the land." In a letter dated January 13, 1902, Potter said to Sweet: "In a few days I will send you another paper for signature, waiving objections and requesting the court to confirm the sale. This will complete the transaction, and as soon as this is done we can then close the deal." In his last letter to Sweet, Potter says: "Inclosed herewith I hand you Chicago exchange for $486.85, and also inclose clerk's receipt for the costs in the case amounting to $12.65; the draft cost 50 cents, making a total of $500 for the Levara land. Kindly acknowledge receipt." The record also discloses that Potter appeared for the appellants in the tax foreclosure case, and filed all necessary papers therein, which he signed as their attorney. So it seems to be established beyond question that he was employed by, and acted as attorney for, the appellants in the transactions above set forth. That he also at the same time was acting as attorney for defendant McNeny, who was the prospective purchaser of the land during all of the time the proceedings and negotiations were pending, is beyond dispute. The testimony also shows that at that time the land was worth at least $1,200. No witness puts its value at less than that sum, while some of the witnesses testify that it was worth $2,400. It is probable that its actual value was somewhere between those figures. So McNeny succeeded in procuring the land from the appellants for much less than its actual value; that Potter knew that fact there can be no doubt, and it seems clear that the defendants, acting together, each with full knowledge of the situation, succeeded in purchasing the land in the manner and for the consideration above stated. It further appears that, notwithstanding Potter's claim that he did not know the actual value of the estate, he examined the

land immediately after the guardian's sale in company with the defendant McNeny, and thereupon took a one-half interest therein; that he surrendered up the $500 check deposited with him by McNeny as a consideration for the sale, and contributed $250 of his own money to the payment of the purchase price. This brings us to the question as to whether or not equity will sustain a sale made under such circumstances.

As above stated, the relation of attorney and client between the defendant Potter and the appellants was established beyond question, and it follows that the entire transaction must be viewed in the light of such confidential relation. An attorney acting for his client is bound to the most scrupulous good faith. And where the attorney purchases the subject of the suit the client may set aside the purchase at will, unless the attorney shows by clear and conclusive proof that no advantage was taken; that everything was explained to the client, and that the price was fair and reasonable. In such a case the relation is confidential, and whether the attorney acts upon information derived from the client or from any other source, he is affected with a trust. This rule is grounded on the question of public policy, not of fraud, and prevails although the attorney be innocent of any intention of deceiving, and acts in good faith. Weeks, Attorneys at Law, sec. 258; *Gray v. Emmons*, 7 Mich. 532; *Jennings v. McConnel*, 17 Ill. 148; *Brown v. Brown*, 4 Ind. 627, 58 Am. Dec. 641; *Zug v. Loughlin*, 23 Ind. 170; *Valentine v. Stewart*, 15 Cal. 387.

We are therefore of the opinion that the appellants are entitled to have all of the deeds, including the quitclaim deed made by the widow and the adult heirs of Wenzel Levara, to the land in question set aside on the repayment of the purchase money. It follows that so much of our former opinion as holds that appellees should have their title quieted to three-sevenths of the land as against the appellants must be and is hereby overruled.

It appears that Sweet, who acted for the appellants in

Wisconsin, only turned over to them $250 of the purchase price of the land, and they now contend that for that reason they should only be required to pay that sum as a condition to full relief from the effect of the transactions complained of. We cannot assent to this view of the matter. The appellees forwarded the full amount of the purchase price, to wit, $500, to Sweet, and if he overcharged them that was not the fault of either Potter or McNeny. They are entitled to receive the $500 paid by them for the land, with seven per cent. interest thereon from the date of such payment. On the other hand the appellants are entitled to set off against that amount the rents and profits of the land, if any, which the appellees have received since they purchased it. The district court correctly held that the judgment for $500 recovered against Stephani in the tax case belonged to the appellants, and our holding herein renders it wholly unnecessary for us to consider the question of the widow's dower. The condition of the record is such that we cannot determine the question of rents and profits so as to make a final disposition of the case, and for that reason the judgment of the district court is reversed at the costs of the appellees, and the cause is remanded to that court, with directions to take an account of the rents and profits; to ascertain the amount which the appellants must repay to the purchaser, and for such other and further proceedings as may be necessary in order to render a final judgment herein in accordance with this opinion.

JUDGMENT ACCORDINGLY.