LAUDA ZIMMER, APPELLEE, V. ELMER GUDMUNDSEN ET AL., APPELLANTS (AND TEN OTHER CASES).

5 N. W. (2d) 707

FILED OCTOBER 9, 1942. Nos. 31374-31384.

*Cleary, Suhr & Davis* and *King & Haggart*, for appellants.

*Evans & Lee, contra.*

Heard before ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

Here are eleven actions in equity which were, by stipulation of the parties, consolidated for trial in the district court. The purpose of each action is to set aside for fraud transfers of interest in the estate of Festus Corrothers, deceased, and for an accounting.

The findings and decrees of the district court sustained the causes of action of the various plaintiffs and separate decrees were entered. It is from these decrees that the defendants have appealed. The appeals have been presented on separate transcripts but on one bill of exceptions, and the cases have been briefed together.

Festus Corrothers, for many years a resident of Grant county, Nebraska, died testate in that county on October 7, 1937. His last will and testament was the following:

"Know all Men by these presents

"That I Festus Corrothers of Whitman Nebraska do make this will and testament First that all my honest debts Shall be paid. Second that one half of all my property Shall go too Lauda Sumers and Effie Hayhurst after Stella Eckels and Lillian Howell have been given ten thousand dollars each one to be payed her ten thousand as early as convenient Third all of the town lots can be sold, the same as the personal property Fourth all of my realstate all of my ranch property out side of town lots is to be held till Such

time comes that the younger great grand child of my Brother Andrew is twenty one years old. Fifth if my personal property should fail to pay my debs then the rent from said ranch can be used to pay said debs. Sixth my heirs can elect some one as often as necessary to handle my estate by giving the other heirs a good bond.

"This the 27 day of Nov 1931
    "Festus Corrothers
"Witness Jay R Taylor
"Witness O. J. King."

This will was admitted to probate on November 23, 1937.

As will be observed from a reading of the will there were two named legatees, they being Stella Eckels and Lillian Howell. Also in the light of the character of the estate left there were also two named legatees and devisees. These were Lauda Sumers and Effie Hayhurst. At the time of the death of Corrothers, Lauda Sumers' name was Zimmer, and Effie Hayhurst's name was Smith. In addition to the two named legatees and the two named devisees and legatees there were nine brothers and sisters or their representatives.

Immediately following the death of Corrothers the defendant Elmer Gudmundsen procured the appointment of Martha Corrothers O'Kieffe as special administratrix of the estate, and Gudmundsen became attorney for the estate and continued as such at all times thereafter.

The first action in the order of filing is by Lauda Zimmer, plaintiff and appellee, against Elmer Gudmundsen and Abbie Gudmundsen, husband and wife, George Manning and Emily Manning, husband and wife, and Charles Finegan and Ada Mae Finegan, husband and wife, defendants and appellants, and the action bears No. 31374 in this court. It is not claimed that the defendants Abbie Gudmundsen, Emily Manning or Ada Mae Finegan participated in any of the matters which are the bases for the actions. They were made parties with their husbands since title to real estate is involved.

In her petition this plaintiff alleged substantially that she

was entitled to a one-fourth interest in the estate of Festus Corrothers after the payment of the two specific legacies totaling $20,000, and that the total value of the estate was about $360,000 subject to debts amounting to about $65,000, but that on account of a false and fraudulent conspiracy among the defendants, and false and fraudulent representations by the defendant George Manning and the defendant Elmer Gudmundsen, attorney for the estate of Festus Corrothers and for the plaintiff, but who in truth and in fact was acting for and on behalf of the defendants Manning and Finegan, upon which representations she relied, she, by assignment of interest in writing and quitclaim deed, transferred and conveyed her interest in the estate to George Manning for $7,500.

The false and fraudulent representations upon which she claims that she relied briefly stated are the following:

That there was no appreciable amount of personal property in the estate.

That the ranch consisting of 26,000 acres in Grant and Hooker counties was in a poor and run-down condition.

That it was nearly impossible to find a purchaser for the ranch, and in any event that the maximum value did not exceed $4 an acre.

That the debts in addition to a $60,000 mortgage were in excess of $10,000.

That unless the estate was settled promptly the special bequests, the mortgage and debts would consume the estate.

That the heirs were planning to litigate to the end that this plaintiff would get nothing under the will.

That $5,000 was about all that this plaintiff would get under orderly administration of the estate.

That the only way she and the other parties interested could obtain anything out of the estate would be by arrangement for immediate sale of the ranch properties.

That there was grave danger as to whether or not the will of Festus Corrothers would be admitted to probate, and if it failed of admission then the plaintiff would obtain nothing out of the estate, whereas in truth and in fact there was no contest of the will threatened.

That Stella Eckels and her attorney, Anson H. Bigelow, had a scheme whereby they would get control of the estate and keep it in litigation for a long period of time and thus prevent this plaintiff from obtaining anything of value out of the estate.

The sixth action in the order of filing, it being No. 31379, is by Effie L. Smith (formerly Effie Hayhurst), plaintiff and appellee, and is against the same defendants in the same capacities as in No. 31374, and the substantial allegations of the petition are the same except that all alleged false representations were made by Gudmundsen, and that she first transferred her interest in the estate for $5,000 and later she received an additional $2,500, together with $1,000, for settlement of a claim based on a power of attorney given to Stella Eckels and the employment of Anson H. Bigelow as her attorney, the details of which need not be set out here.

The second action in order of filing, it being No. 31375, is by Sarah Virginia Corrothers, guardian of the person and estate of Alexander Corrothers, plaintiff and appellee, against the defendants named in the first action and in the same capacities. Alexander Corrothers is an incompetent brother of Festus Corrothers.

The petition sets forth that the said Alexander Corrothers was entitled to a one-eighteenth interest in the estate of Festus Corrothers after payment of the two legacies named in the will.

The petition in this case sets forth the same conspiracy to defraud as is set forth in case No. 31374, and sets forth further that at a meeting held at Grafton, West Virginia, with the heirs of Festus Corrothers, and others, Gudmundsen made substantially the same false and fraudulent representations as to the amount, quality, character and condition of the estate as are alleged in the petition in No. 31374.

In addition it is alleged that Gudmundsen represented that Effie L. Smith and Lauda Zimmer could, and that they intended to, prove and establish that they were illegitimate children of Festus Corrothers, in which event Alexander Corrothers would be excluded from taking anything from

the estate, although Gudmundsen knew that Effie L. Smith and Lauda Zimmer had no such intention; and further that in no event would the interest of Alexander Corrothers in the estate exceed $1,000; and that this amount could not be obtained unless assistance were given to the end that immediate settlement of the estate could be made.

Plaintiff further says that she relied upon the representations of Gudmundsen, and that she and Altha Lee Rogers, daughter of Alexander Corrothers, by contract conveyed, or attempted to convey, to George Manning the interest of Alexander Corrothers in the estate of Festus Corrothers, deceased, for which they received $2,000.

The third action in order of filing, it being No. 31376, is by Ida Galliher, plaintiff and appellee, against the defendants named in the first action and in the same capacities. This plaintiff is a sister of Festus Corrothers.

The petition sets forth that the plaintiff was entitled to a one-eighteenth interest in the estate of Festus Corrothers, deceased.

The allegations of fraud are the same in all substantial particulars as those contained in case No. 31375.

The plaintiff says that, by reason of the false and fraudulent representations upon which she relied, she, by assignment of interest and quitclaim deed, transferred her interest in the estate of Festus Corrothers, deceased, to George Manning for the sum of $2,000.

The fourth action in order of filing, it being No. 31377, is by Anna McBee, plaintiff and appellee, against the defendants named in the first action and in the same capacities. This plaintiff is a sister of Festus Corrothers.

What has been said as to the petition in No. 31376 is equally applicable here and it need not be repeated.

This plaintiff says that, by reason of the false and fraudulent representations upon which she relied, she, by assignment of interest and quitclaim deed, transferred her interest in the estate of Festus Corrothers, deceased, to George Manning for the sum of $2,000.

The fifth action in order of filing, it being No. 31378, is

by Mary Poe, plaintiff and appellee, against the defendants named in the first action and in the same capacities. This plaintiff is a sister of Festus Corrothers.

What has been said as to the petition in No. 31376 is equally applicable here and need not be repeated.

This plaintiff says that, by reason of the false and fraudulent representations upon which she relied, she transferred her interest in the estate of Festus Corrothers, deceased, by assignment of interest and quitclaim deed to George Manning for $2,000.

The ninth action in order of filing, it being No. 31382, is by Stephen Corrothers, plaintiff and appellee, against the defendants named in the first action and in the same capacities. This plaintiff is a brother of Festus Corrothers.

What has been said as to the petition in No. 31376 is equally applicable here and need not be repeated.

This plaintiff says that, by reason of the false and fraudulent representations upon which he relied, he transferred his interest in the estate of Festus Corrothers, deceased, by assignment and quitclaim deed to George Manning for $2,000.

The tenth action in order of filing, it being No. 31383, is by Andrew Corrothers, Jr., administrator of the estate of Andrew Corrothers, Sr., and others, the others being widow and heirs of Andrew Corrothers, Sr., plaintiffs and appellees, against the defendants named in the first action and in the same capacities. Andrew Corrothers was a brother of Festus Corrothers and died subsequent to the death of Festus Corrothers.

Substantially the same allegations are contained in this petition with reference to false and fraudulent representations as are contained in No. 31375.

These plaintiffs say that, by reason of the false and fraudulent representations which were relied upon, Andrew Corrothers, Sr., conveyed his interest by assignment and quitclaim deed to George Manning for $2,000.

The eleventh action in order of filing, it being No. 31384, is by Martha Corrothers O'Kieffe, plaintiff and appellee,

against the defendants named in the first action and in the same capacities. This plaintiff is a sister of Festus Corrothers, deceased.

Substantially the same allegations as to fraud and misrepresentation are contained in the petition as in No. 31375.

This plaintiff says that, by reason of the false and fraudulent representations upon which she relied, she transferred her interest in the estate of Festus Corrothers by assignment of interest and quitclaim deed for $3,000.

The seventh action in order of filing, it being No. 31380, is by Lulu M. Holland, and against the defendants named in the first action and in the same capacities. The eighth action is No. 31381, and is by Mabel McCullough.

Lulu M. Holland and Mabel McCullough are daughters of Sam Corrothers. Sam Corrothers was a brother of Festus Corrothers and he predeceased Festus.

These plaintiffs claim in their petition that each of them is entitled to a one-thirty-sixth interest in the estate of Festus Corrothers, deceased, after payment of the two legacies totaling $20,000.

They further set out that in substance the same false and fraudulent representations were made to these plaintiffs as were made to the brothers and sisters. The representations, however, were in large measure made in letters to them and to attorneys.

They say that, by reason of the false and fraudulent representations, they were induced to and did transfer their interest in the estate for $3,000.

To each of the actions the defendants filed answers. In the answers they denied any fraud or misrepresentation, and alleged that the various plaintiffs were fully informed as to the true condition and value of the estate of Festus Corrothers, and alleged that the defendant Manning was an innocent purchaser in each instance for value.

They further alleged that relying on the good faith of the plaintiffs Manning expended the sum of more than $73,000 in payment of costs, debts and expenses of administration in excess of rentals and bills receivable collected; and that

the defendants Manning and Finegan expended for repairs, betterments, fencing, wells, windmills, tanks, houses, barns and other improvements on the ranch moneys which increased the value of the real estate in the amount of $18,000.

They deny that Gudmundsen ever represented Manning until after the sale of the interests of the respective plaintiffs.

They deny that Finegan participated in any of the matters mentioned until May, 1939, when he purchased a one-half interest in the properties in question from the defendant Manning. They also in their answers plead laches.

Replies were filed and trial was had to the court on the issues joined.

It may well be stated here that no effort has been made to set forth the full details of the pleadings, but only by abstraction the elements which we deem necessary to a determination of the cases. The pleadings in each case take up more than 25 pages of each transcript.

The trial court found that all of the plaintiffs had sustained the material allegations of their respective petitions and decreed accordingly. All of the transfers of interest in the estate of Festus Corrothers, deceased, were ordered vacated and set aside and the interest of each of the plaintiffs was restored. An accounting was also made and decrees entered thereon.

Certain pertinent and undisputed facts are the following:

Festus Corrothers died testate in Grant county, Nebraska, on October 7, 1937.

He left a will which has been hereinbefore quoted.

He had, at the time of his death, title to a ranch consisting of 26,848.11 acres.

He had a lease on 2,480 acres of school-land.

In his will a legacy of $10,000 each was provided for Stella Eckels and Lillian Howell.

On the basis of the interpretation placed upon the will by the defendant Elmer Gudmundsen, the brothers and sisters of Festus Corrothers, or their representatives, were the heirs at law of Festus Corrothers, and were entitled to take

proportionately one-half of the estate after payment of the named legacies and the debts and costs of administration, unless Stella Eckels established herself as the common-law wife of Festus Corrothers, or Lauda Zimmer or Effie L. Smith, or both of them, established themselves as the illegitimate children of Festus Corrothers agreeable to the laws of Nebraska.

On the basis of the interpretation of the will by the same defendant, Lauda Zimmer and Effie L. Smith were entitled to take in equal portions one-half of the estate after payment of the named legacies and the debts and costs of administration, unless Stella Eckels established herself as the common-law wife of Festus Corrothers.

The respective interests of the eleven plaintiffs were purchased by the defendant George Manning at the prices set forth in the petitions.

From the beginning the defendant Elmer Gudmundsen was attorney for the estate of Festus Corrothers, deceased, and so continued until the estate was presumably closed.

At least from the dates of the assignments of interest by the various plaintiffs Elmer Gudmundsen became and thereafter at all times continued to be attorney for the various assigning plaintiffs.

In view of the thousands of pages of the record and the hundreds of exhibits, it is not possible to review the evidence exhaustively in this opinion. It will be possible only to set forth the conclusion we have arrived at from an examination of the record.

First and foremost, each and all of the plaintiffs contend on the question of fraud and misrepresentation that Elmer Gudmundsen was the representative of the defendants Manning and Finegan.

We may state here that the evidence is insufficient to show that Finegan culpably participated in any of the matters which are the bases of these actions prior to his purchase of an interest in the estate in May, 1939.

The evidence does, however, preponderantly, if not conclusively, show that in all of the matters relating to the pur-

chases, and assignments of interest of the various plaintiffs, Gudmundsen was the agent and representative of Manning. Some of the facts pointing to this conclusion are the following: Almost immediately after the appointment of the special administratrix, Gudmundsen started to travel and to contact the parties interested in the distribution of the estate. As he contacted them he began negotiations for the sale of their respective interests. He saw Lauda Zimmer in Pittsburgh, Pennsylvania. He saw some of the parties in and about Grafton, West Virginia. He saw Effie L. Smith in Chehalis, Washington. He went a second time to see Lauda Zimmer and on this occasion was accompanied by Manning. He went a second time to see Effie L. Smith. On most of his trips and during most of his negotiations he was in constant communication with Manning. Manning paid all of his expenses. Manning furnished all of the money for the purchase of the various interests and took title thereto in his name. Gudmundsen urged the advisability of sale of interests of the interested parties, but never sought to put the properties of the estate on the market or to offer them for sale except to Manning. In fact, there is some slight evidence to the effect that he desired to exclude all prospective purchasers except Manning. Instead of attempting to get for the owners as much as possible for their interests, he induced them to sell and convey, and to Manning, for the lowest price possible. For his service in these connections he was compensated by Manning. In truth, as to some of the transactions Manning specifically admits that Gudmundsen was his representative. All instruments of transfer were prepared by Gudmundsen, and at least some of them were prepared before Gudmundsen called upon the interest-holder with the name of Manning appearing therein as grantee or assignee. As to some of the transactions the facts testified to by Gudmundsen amount to an admission that he was representing Manning.

It becomes clear then that Gudmundsen, in the transactions with regard to the sale and disposition of the interests of the eleven plaintiffs herein, while standing in a fiduciary

relationship with them and the estate, was representing interests plainly and notoriously adverse to his relationship and without full disclosure and consent.

Such a situation, even though in point of fact no harm comes from it, is severely to be condemned and with good reason. In fact, it is condemned by the decisions of the courts and the recognized canons of ethics. This is not an obscure condemnation, but is one known and recognized by every lawyer who has come into the profession with a proper background of education and training. The rule is adhered to by all lawyers who have the proper perspective of their high calling and the proper attitude toward their professional honor and integrity.

The Canons of Professional Ethics of the American Bar Association by official adoption have become the canons of ethics for the bar of this state. *In re Integration of Nebraska State Bar Ass'n*, 133 Neb. 283, 275 N. W. 265. Canon 6 is as follows:

"It is the duty of a lawyer at the time of retainer to disclose to the client all the circumstances of his relations to the parties, and any interest in or connection with the controversy, which might influence the client in the selection of counsel.

"It is unprofessional to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. Within the meaning of this canon, a lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to oppose.

"The obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences forbids also the subsequent acceptance of retainers or employment from others in matters adversely affecting any interest of the client with respect to which confidence has been reposed."

This court said in the recent case of *Federal Trust Co. v. Damron*, 124 Neb. 655, 247 N. W. 589:

"An attorney, after receiving the confidence of a client,

may not enter the service of others whose interests are adverse to such client and those in privity with him, in the same subject-matter to which the confidence relates, or in matters so closely allied thereto as to be, in effect, a part thereof."

In 5 Am. Jur. 296, sec. 64, it is stated:

"An attorney owes to his client an undivided allegiance, and after he has been retained by, and received the confidence of, a client, he cannot, without the free and intelligent consent of his client, given after full knowledge of all the facts and circumstances, act both for his client and for one whose interest is adverse to or conflicting with that of his client in the same general matter, however slight such adverse interest may be; nor is it material that the intention and motive of the attorney may have been honest."

The rule has at least a twofold purpose. Its design is not alone to prevent the dishonest lawyer from fraudulent and subversive conduct, but also to preclude the honest lawyer from putting himself in a position where he may be required to choose between conflicting duties, or to attempt to reconcile conflicting interests, rather than to enforce the rights of the interest which alone should require his concern. *Strong v. International Bldg. Loan & Investment Union,* 183 Ill. 97, 55 N. E. 675.

Lauda Zimmer lived in Pittsburgh, Pennsylvania; Effie L. Smith at Chehalis, Washington; Lulu M. Holland at Edmonton, Canada; Mabel McCullough at Calgary, Canada; Martha O'Kieffe at Whitman, Nebraska; Stephen Corrothers at Cumberland, Maryland; and the remaining plaintiffs in the vicinity of Grafton, West Virginia. The plaintiffs were all contacted by Gudmundsen directly or indirectly in their home vicinities, and obviously not all at the same time. He came into contact directly, at different times, with Effie L. Smith, Lauda Zimmer, Martha O'Kieffe, Lulu M. Holland and Mabel McCullough. He also came into direct contact with some of the others.

As to all of them it is claimed that he misrepresented the character, quality, quantity and value of the estate.

As to those with whom he came into direct contact, from an examination of the evidence we are convinced he did falsely and fraudulently misrepresent the character, quality, quantity and value of the estate.

The preponderance of the evidence shows that Gudmundsen represented that the personal property of the estate was inconsequential and of little value. This representation was definitely untrue. There was cash in three banks totaling $3,519; there were debts due the estate in the amount of $4,564.05; there was a mortgage due the estate in the amount of $5,000; there was a claim against the Chicago, B. & Q. R. Co. on which ultimately a recovery was had in the amount of $1,000; there were probably 1,500 tons of hay of the value of over $6,000, together with other items of value which included some live stock.

Gudmundsen has testified that when he communicated with the plaintiffs he knew little or nothing concerning the personal property. Fairness may require that he be given the benefit of the doubt in this connection, but none of the transactions were closed at once. He certainly failed to disclose any of this information to the plaintiffs when he came into possession of it, which without doubt was before the transactions were closed. He withheld the information and by his connivance with Manning all of this property passed into the hands of Manning along with the real estate.

As to the real estate we find that there was no material misrepresentation as to quantity. However, it appears from the evidence that there was a glaring misrepresentation as to value. The district court found that the ranch was worth much in excess of the maximum value Gudmundsen represented. The evidence sustains the finding of the district court in this regard.

The evidence sustains the claim that Gudmundsen represented that foreclosure of the $60,000 mortgage on the ranch was threatened. That this representation was false is nowhere denied. No instalment on the mortgage was delinquent or even due.

Also the evidence sustains the charge that Gudmundsen

represented to the heirs that Lauda Zimmer and Effie L. Smith were proposing to take steps to establish themselves as recognized illegitimate children of Festus Corrothers in order that they might take as heirs to the exclusion of the brothers and sisters. These representations were false by the admission of Gudmundsen himself. They, and each of them, made it clear to Gudmundsen that they had no desire to have their illegitimacy made public, but only desired that which was to come to them by the terms of the will.

The representations made to Lauda Zimmer and Effie L. Smith, which we find to be supported by the weight of evidence, that the heirs were threatening to contest the will find no support in the evidence.

Whether the other charges of fraud and false representation have been sustained is of no great consequence. Without specific reference to them it will be stated that some of them do and some do not find sufficient support in the evidence. If those mentioned have been sustained, and we hold that they have, and the plaintiffs have thereby been defrauded, then the transfers should be set aside and the plaintiffs restored to their former relation to the estate of Festus Corrothers, deceased.

Returning now to those of the plaintiffs not contacted by Gudmundsen, it is pertinent to inquire as to whether or not the evidence is sufficient to support the charges of fraud and misrepresentation as to them.

Gudmundsen had a meeting at Musgrove's store at Grafton, West Virginia, with the heirs and representatives of heirs whose presence could be obtained, and there to the assembled group he explained his scheme. The scheme was carried back, as doubtless Gudmundsen purposed, to those who were not present and they like the rest, relying on the same representations, transferred their interests to Manning.

In addition to this and in final consummation of the scheme, Gudmundsen and Manning sent others with their message of deceit to those aged and aging and unsuspecting West Virginians.

The record indicates clearly that those who did not see Gudmundsen relied on his representations as did those seen by him.

Were these plaintiffs damaged by reason of the representations upon which they relied in making their respective transfers to Manning? Without doubt they were.

The evidence sustains the finding of the district court that the real estate was of the value of about $210,000, and that the personal property was of the value of about $24,000. There was a mortgage of $60,000. Thus it will be seen that the net value of the estate was at the time of the death of Festus Corrothers about $174,000. Out of this must come costs of administration, and the debts of the estate which were not large.

All of this George Manning obtained by payment of $37,000 plus payment of the two legacies, the debts of the estate, the expenses of administration and a fee of $10,000 to Gudmundsen, which items according to the contention of the defendants total $42,580.87. Thus it will be seen that Manning obtained an estate of the net value of approximately $174,000 for approximately $79,580.87. This does not take into account the value of the use of the estate for the period between the death of Festus Corrothers and the final consummation of the deals with the eleven plaintiffs. In fairness also it does not take into consideration payments of either principal or interest on the ranch mortgage, and the necessary cost of upkeep of the ranch and the estate properties.

As has been already indicated, the evidence is not sufficient upon which to predicate a finding that the defendant Finegan participated in the scheme of Gudmundsen and Manning to obtain control of and title to the Festus Corrothers estate, but there can be no question that he was familiar with the properties and their values and knew the financial condition of the estate. He had been a rancher and banker in that community for a long period of years. He knew what Manning had paid for the various interests. In May of 1939 he paid Manning half of the costs of the

purchase including costs and expenses to Manning for a one-half interest in the interests acquired. He also paid half of the $10,000 fee to Gudmundsen for his machinations in the acquisition of the interest and the estate for Manning. In the light of his position and knowledge he could not help knowing that these plaintiffs had been grievously and unconscionably cheated at the hands of Gudmundsen and Manning, and so knowing he projected himself into the picture and partook of the loot on even terms with Manning. Under these circumstances he is chargeable with and must be required to accept the consequences. His liability with regard to the interests acquired from the plaintiffs and the fraud practiced upon them is the same as that of Manning.

The district court found that the plaintiffs had sustained the charges of fraud and misrepresentation in the petitions. We are of opinion that these findings were supported by the weight of evidence and should be sustained. In addition the court made an accounting between each of the plaintiffs on the one hand and the defendants on the other. In the accounting it is found that the defendants are chargeable to the estate with the amount of $69,965.27 against which they are entitled to a credit of $47,079.81, leaving a balance due from them in the amount of $22,885.46.

The defendants object to this accounting for several reasons. They object to the valuation of the ranch equipment, the 1938 hay crop and the rental valuation for the period that the ranch has been in their charge. Without going into details or referring to specific testimony we conclude that the finding of the district court with regard to these three items is sustained by the evidence.

The defendants urge that they are entitled to an allowance for expense of defense of a suit by Stella Eckels who attempted to establish herself as the common-law wife of Festus Corrothers. This action was defended by Manning.

No obligation rested upon the administrators to defend this action.

Since this action was in the interest of the heirs and dis-

tributees, and it was defended successfully, no good and sufficient reason appears why the proper expense of this litigation should not be charged to the interests of the heirs and distributees. The items claimed total $3,172.74. All of the items composing this account appear to be reasonably proper except items totaling $730.78. These items include three of expense for the taking of the deposition of Stella Eckels, a ticket for H. E. Wolf to Omaha, hotel expense at Omaha for Manning, payment to George Howell and $400 as an attorney's fee to Claude A. Davis. Harry Gantz was the attorney who conducted the litigation, and for his services he received $2,057.13. As to this matter the defendants are entitled to an additional credit in the amount of $2,441.96.

The administrator in a contest to establish heirship and distribution of an estate of a decedent not being an adverse party and having no duty to defend against one claiming to be the common-law wife of the deceased, one assuming the position of heirs ought to be permitted to recover the proper expense of the litigation, and especially if the litigation is beneficial to those interests represented. See *Sorensen v. Sorensen,* 68 Neb. 483, 94 N. W. 540. Opinions on rehearing in this case appear in 68 Neb. 490, 98 N. W. 837; 68 Neb. 500, 100 N. W. 930; 68 Neb. 509, 103 N. W. 455.

Further, the general rule is that the purchaser of an heir's interest, if the sale is set aside, may be entitled to reimbursement for expenditures made in good faith to protect the heir's interest or title. *Durham v. Stubbings,* 223 Mich. 261, 193 N. W. 809; 12 C. J. S. 1098, sec. 83.

We hold that the sales here were fraudulent, but on the other hand that the expenditures of Manning, to the extent indicated, were made in good faith for the protection of the interests of these plaintiffs.

After trial in the district court and pending appeal in the supreme court, Manning settled this litigation with Stella Eckels at considerable cost. Defendants claim that they are entitled to a credit for this amount. This was done voluntarily and on his own initiative. No reason exists to charge this expense against the interests of the heirs and distrib-

utees. This is especially true in the light of the fact that Stella Eckels was unsuccessful in both the county and the district courts.

After rendering the accounting the district court allocated and apportioned to the various plaintiffs the net amount that was due the estate in accordance with the prayers of the respective petitions, and then set these amounts off against the amounts required to be tendered as a condition of rescission and vacation of the transfers on account of fraud, and rendered judgment accordingly. This was done in addition to setting aside the transfers and the restoration of the plaintiffs to their former positions with regard to the estate.

If we assume that the petitions correctly state the status of the plaintiffs with regard to the Festus Corrothers estate and conclude that this is an issue determinable in these actions, then we should, on the evidence, sustain the trial court. The evidence supports the computation made. However, we can neither so assume nor so conclude.

The right of the plaintiffs Zimmer and Smith to take is dependent upon the will, and the right of the others is dependent upon the will and heirship. Before the latter may take under the will their right to have taken as heirs in case of intestacy must be established. This right has not been established in these cases and moreover it could not have been established. It is not a triable issue here. Had there been a decree of heirship in the county court and such decree pleaded here, and if the decrees and judgments had been rendered conformable to a decree of heirship, then the full determinations made here would be properly sustainable. There, however, has never been a decree of heirship. The matter of heirship was not submitted to the county court for ascertainment and determination.

The county court has exclusive jurisdiction of the probate of wills and the administration of estates. Comp. St. 1929, sec. 27-503. See *Boales v. Ferguson,* 55 Neb. 565, 76 N. W. 18; *Smith v. Estate of Bayer,* 95 Neb. 488, 145 N. W. 1030; *State v. O'Connor,* 102 Neb. 187, 166 N. W. 556; *Pinn v. Pinn,* 108 Neb. 822, 189 N. W. 371.

"County courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, and in such proceedings to find and determine heirship." Const. art. V, sec. 16.

We are of opinion that the will, fairly interpreted in the light of its context and the law, bequeathed to Stella Eckels and Lillian Howell $10,000 each, and then after the payment of debts and expenses the residue was left one-fourth to Lauda Zimmer, one-fourth to Effie L. Smith, and the remaining one-half to the heirs of Festus Corrothers.

Lauda Zimmer and Effie L. Smith and their interests having been named and designated in the will, on the accounting the values of their rights were ascertainable except to the extent that they may be reduced by further expenses of the estate not yet determinable, but the rights of the individual heirs are not determinable in these actions in the light of the fact that there has been no finding and decree of heirship. Until there is a legal and binding determination of heirship arrived at in the manner provided by statute, a judgment or decree which amounts to a final distribution to heirs is improper and cannot be sustained.

Likewise a distribution of a portion of a residuary estate, the amount of the residue being dependent upon the expense of estate which has not been fully determined, cannot be sustained until ascertainment of the estate expense.

It follows that the district court was in error in, in effect, making distribution of the estate by its decree in absence of evidence of a decree of heirship, and in the absence of a showing of full and final costs and expenses of administration.

Such activities as were engaged in here by Gudmundsen have been condemned by this court.

In the first paragraph of the syllabus in *Levara v. McNeny*, 73 Neb. 414, 102 N. W. 1042, it is stated: "Where an attorney, by statements and representations made to his clients as to the condition and value of their land, the subject of the litigation, procures the sale thereof to be made to a third party for whom he is at the same time acting in that

capacity, for an inadequate price, * * * a court of equity will set aside the transaction and the conveyances, and restore the estate to the vendors on the repayment of the purchase price, with interest * * * ." In the opinion it is stated: "In such a case the relation is confidential, and whether the attorney acts upon information derived from the client or from any other source, he is affected with a trust. This rule is grounded on the question of public policy, not of fraud, and prevails although the attorney be innocent of any intention of deceiving, and acts in good faith." So it is then that, even if the evidence here were not sufficient to show fraud, public policy would require that these transfers be set aside under the evidence showing that the transfers were disadvantageous to the plaintiffs.

In the vacation of such transfers the plaintiffs are entitled to have the defendants account for the rents and profits, or the value of the use of the lands together with interest thereon at the legal rate. *Levara v. McNeny, supra.*

The benefits of these transactions flowed in the first instance to George Manning, and then in part to Charles Finegan. They are chargeable with the fraudulent conduct of Gudmundsen. They have since retained the benefits.

"A party cannot retain the benefits derived from the fraudulent conduct of his agent, without being chargeable with the instrumentalities employed to effect the purpose." *McKeighan v. Hopkins*, 19 Neb. 33, 26 N. W. 614.

"If one avail oneself of the fruits of an act one thereby charges himself with the burden of all the instrumentalities employed by the agent to effect his purpose." *Osborn Co. v. Jordan*, 52 Neb. 465, 72 N. W. 479.

"Where principal and agent jointly participate in, and share the fruits of, actionable fraud, they are jointly liable for resulting damages." *Dresher v. Becker*, 88 Neb. 619, 130 N. W. 275. See, also, *Western Union Life Ins. Co. v. Mayhew*, 135 Neb. 6, 280 N. W. 250.

It is urged by the appellants that in these transactions Gudmundsen, from some point on, was dealing at arms length with the plaintiffs. This contention has no support

whatever in the record. We are unable to determine even when it was that the defendants contend that Gudmundsen's confidential relation ceased and his right to deal at arms length began. He was attorney for the estate and the administrators from beginning to end, and by power of attorney he represented the other parties up to and including the closing of the probate proceeding in Grant county, Nebraska. He stood at all times in a confidential relation with the plaintiffs.

This court said in *Wustrack v. Hall*, 95 Neb. 384, 145 N. W. 835, in dealing with this character of confidential relationship: "Plaintiff had the right to believe and rely upon the representations and to be governed by the conduct of the person whom she believed to be occupying a confidential relation to her."

Here the plaintiffs not only believed that Gudmundsen occupied a confidential relationship with them, but that was the fact.

These plaintiffs not only did but had to rely upon his representations, and those of Manning and others sent by them, in all things relating to the character, quality, quantity and value of the estate. They had no other source of information. It is true that some of them called in local attorneys for advice, but not upon the basic principles of these actions for fraud and misrepresentation. The attorneys even, upon the representations as to the estate, were required to rely upon the integrity of the defendants. This contention of the defendants is devoid of merit.

Having considered these cases *de novo*, we conclude that all of the findings and the accounting of the district court are correct and should be sustained except the following:

The findings of heirship, while probably correct, cannot be sustained. For a determination of this question resort must be had to the county court, and, of course, the decreed distribution based upon these findings must fall with the findings.

The defendants are entitled to an additional credit of $2,-441.96, for the defense against the effort of Stella Eckels to

establish that she was the common-law wife of Festus Corrothers.

Except to this extent, and to the further extent that the decrees fix the interest in the estate and establish and declare the title to real estate to repose in these plaintiffs, the decrees of the district court are affirmed, the effect of which is that each of the plaintiffs will be required to complete his or her tender, with interest, as indicated by the several decrees for the full amount indicated, without any kind or character of set-off; that the right to participate in the avails of the estate and the money required to be paid by the defendants as hereinbefore indicated shall depend upon finding and decree of heirship and the further expenses of the estate; the several quitclaim deeds, assignments of interest or other instruments of transfer are vacated, set aside and held for naught; and the plaintiffs are restored to their former status with regard to the estate of Festus Corrothers, deceased, but that portion of the decree declaring title to respective interests is vacated and set aside, since the matter of title is dependent upon establishment of heirship in accordance with law.

The decrees are affirmed in part and reversed in part.

AFFIRMED IN PART AND REVERSED IN PART.